$$\begin{array}{c|c} 25 & 473 \\ 27 & 659 \\ \hline 25 & 473 \\ 44 & 627 \end{array}$$

---

JOHN WILHELMSON ET AL., PLAINTIFFS, V. MATTHEW H. BENTLEY ET AL., DEFENDANTS.

1. **Injunction:** USURY. There being outstanding notes against the plaintiffs, a great part of which represented usurious interest on former evidences of indebtedness, which had been renewed and such usurious interest made to represent principal, said notes being held by a party having notice of their usurious character, and being about to mature, and there being ground to believe that they were about to be transferred to an innocent holder, *Held*, That the plaintiffs might take the initiative and proceed in equity and by aid of injunction for relief.

2.  The Evidence examined, and *Held*, Sufficient to sustain the findings and judgment of the district court.

APPEAL and cross-appeal from the district court of Webster county. Heard below before GASLIN, J.

*Batty & Casto,* for plaintiff, cited: *Hullhorst v. Scharner,* 15 Neb., 59. *Nelson v. Hurford,* 11 Neb., 465. 2 Parson's Notes and Bills, 420. *Darst v. Backus,* 18 Neb., 231. *Wortendyke v. Meehan,* 9 Neb., 229.

*Case & McNeeny,* for defendant Bentley, cited: Daniel on Neg. Int., Sec. 803.

*J. S. Gilham,* for defendant Potter, cited: *N. E. M. S. Co. v. Aughe,* 12 Neb., 504. *Amble v. Trimer,* 17 N. J. Eq., 242. *Masterson v. Grubbs,* 70 Ala., 406. *Barr v. Collier,* 54 Ala., 39. *Morton v. Thurber,* 85 N. Y., 550. Tyler on Usury, 231–232.

COBB, J.

This cause comes up by appeal from the district court of Webster county. The plaintiffs in that court, John and Kate Wilhelmson filed their petition therein, in which they alleged that, on or about December 11, 1883, the plaintiff, John Wilhelmson, made and delivered to the defendant, Bentley, a promissory note in the sum of $265, secured by mortgage on certain cattle; that of this sum $50 was usurious interest, computed in advance upon the true consideration, or sum actually loaned, of $215, and added thereto as part of the principal, the whole drawing ten per cent interest per annum from date; that afterwards, on or about March 1, 1884, the plaintiff, John Wilhelmson, executed and delivered to the defendant, Bentley, another note for the sum of $775, due six months after date, with interest at ten per cent from date, and gave a

mortgage on a lot of cattle to secure the same. The note for $265, $50 usurious interest and $215 actual considera- tion, was added to a new consideration of $312.50, and no more, for which said note for $775 was given, thus making the consideration of said note of $775 consist of $527.50 actual debt on money loaned, and $247.50 usuri- ous interest. The petition sets out sundry payments made by the plaintiff, John Wilhelmson, to the defendant, Bent- ley, on the last mentioned note.

That afterwards, on or about the 29th day of September, 1884, both of the plaintiffs gave the defendant, Bentley, two other notes, as renewal only of said last above described note, in the sum of $600 and $150 respectively, each due April 1, 1885, and gave a mortgage on a lot of cattle to secure the same; that there was not at that time, and had not been received by said plaintiffs, or either of them, any new consideration for said last mentioned notes, but that the same included the balance of the $775 note and addi- tional usurious interest; that said defendant Bentley at the time gave up and surrendered the said note and mort- gage of $775; that of these two notes of $600 and $150, the sum of $307.50 only was of the true debt owing by the plaintiffs to the defendant, and that the balance of $442.50 was usurious interest, computed in advance and added to the true debt; that afterwards the plaintiff, John Wilhelmson, made the following payments to said defend- ant Bentley on said notes of $600 and $150, to-wit: Oc- tober 1, 1884, $11; February 1, 1885, $155; and Febru- ary 11, 1885, $84.25; that said payment of $155 paid off and redeemed the said note of $150 and interest; that said payment of $11, so made October 1, 1884, and the payment of $84.25, so made February 11, 1885, should have been endorsed on said note of $600, but were not.

That afterwards, to-wit, on or about the 10th day of March, 1885, plaintiffs had another renewal with the said defendant, Bentley, and then gave said Bentley six other

notes, five of which were for the sum of $110 each, and
due respectively the 10th days of April, May, June, July,
and August, 1885, and one for $115, due September 10,
1885, all drawing ten per cent interest from date, and gave
a mortgage on a lot of cattle, horses, and farming imple-
ments to secure the same; that said note of $600, dated
September 29, 1884, was included in these six notes, and
said $600 note surrendered, but that the mortgage given
to secure the $600 and $150 notes had not been discharged
of record; that of the six notes, aggregating $665, the
sum of $57.25 was of the true debt owed by said plaint-
iffs to said defendant, and the balance thereof, to-wit,
$607.75, was usurious interest, computed by said defend-
ant from time to time on the true debt and previous usu-
rious interest, and added to the true debt; that said plaint-
iffs, nor either of them, ever, at any time during the said
transactions with said defendant, received any considera-
tion from him except the said $315 on December 23, 1883,
and the said $312.50 on March 1, 1884, and that at all of
said times plaintiffs contracted to pay said usurious inter-
est to said defendant, well knowing the same to be usury,
and with the intent of paying the same as usury, and that
at all times the said defendant contracted to reserve, and
did reserve, said usurious interest, well knowing the same
to be usurious, and with the intent to reserve the same as
usury; that afterwards, and on the 10th day of April,
1885, said plaintiff, John Wilhelmson, paid to said de-
fendant the further sum of $110, which paid off the first
of the said series of six notes; that said plaintiff had paid
in the aggregate to the said defendant, on said true debt of
$527.50, the sum of $580.25, or $52.75 more than the
true debt; that there is outstanding against the plaintiffs,
and either in the possession of the defendant Bentley, or
the defendant Potter, five notes made and delivered by
the plaintiffs to the defendant Bentley, all dated March
10, 1885, four of them being for $110 each, and due on

the 10th days of May, June, July, and August, 1885, respectively, and one for $115, due the 10th day of September, 1885; that the plaintiffs have reason to believe, and do believe, that the defendant Bentley has pretended to assign, endorse, and turn over said five notes to the defendant Potter, for the purpose of cheating, defrauding, and wronging the plaintiffs, and that the defendant Bentley thus and thereby willfully, wrongfully, fraudulently, and corruptly connived with the defendant Potter in thus pretending to assign, endorse, and turn over said notes and mortgage to cheat, defraud, and wrong plaintiffs, and intending thereby to prevent plaintiffs from setting up usury as a defense to the enforced collection of said notes and mortgage, and that the defendant Potter, in pretending to purchase and receive said notes and mortgages did so for the purpose of cheating, wronging, and defrauding the plaintiffs, and there and then, in thus pretending to purchase, receive, and accept said notes and mortgages, wrongfully, willfully, and fraudulently connived and conspired with the defendant Bentley to cheat, defraud, and wrong plaintiffs, and thereby, then and there, to prevent plaintiffs from setting up usury as a defense to the enforced collection of said notes and the foreclosure of said mortgage, and that there was no consideration whatever given or contracted by the defendant Potter to the defendant Bentley, or any one else for him, or received or contracted for by defendant Bentley for the pretended assigning, endorsing, and turning over of said notes and mortgage by the defendant Bentley to the defendant Potter, but that the same was wholly without consideration, and void in law, and was so done and accepted by the defendant solely for the purpose of cheating, defrauding, and wronging plaintiffs; that at the time of said pretended assignment, endorsement, and turning over of said five notes and said mortgage by said defendant Bentley to said defendant Potter, and for a long time previous thereto, the latter had

full notice, knowledge, and information of the usurious character of said five notes and mortgage, also of the usurious character of the $600 note given to defendant Bentley by plaintiffs on the 29th day of September, 1884, due April 12, 1885, for which the said six notes given March 1, 1885, were given as renewal.

The defendants are about to sell, assign, and transfer said five notes and the mortgage given to secure the same to an innocent purchaser for value without notice, in order to and for the purpose of preventing the plaintiffs from setting up usury as a defense to the enforced collection of the same; and that the defendants are about to enforce a collection of said five notes by having said mortgage foreclosed on the property covered thereby, and that if defendants are not restrained from selling, negotiating, and transferring said notes and mortgage, and restrained from the collection of the same, the plaintiffs will suffer great and irreparable injury; that plaintiffs have more than paid defendant Bentley the consideration for which said five notes were given, and $52.75 over, and that the whole of the said five notes is usury, and that plaintiffs are without remedy at law.   With prayer for an injunction, for judgment, and for general relief.

A temporary injunction was allowed as prayed.

Each of the defendants demurred to the petition, separately as to himself, on the ground that it did not state facts sufficient to constitute a cause of action against him, which were by the court overruled.

Thereupon the defendant Potter made answer to the said petition, that as to the $600 note mentioned in said petition, that he, said answering defendant, on the 3d day of March, before the said note became due, in the usual course of business, for a good and valuable consideration, to-wit, for five hundred and eighty dollars then given and paid by said defendant to defendant Bentley, purchased said note of and from said defendant Bentley, and

that he, the said defendant Potter, had not at the time of his said purchase of said note, or at any time before, actual or any notice that the said note had been given for the usurious consideration or upon the usurious contract in said petition alleged, or for any usurious consideration, or upon any usurious contract whatever; that said plaintiff Wilhelmson was, immediately after said purchase, duly advised by said defendant of the fact that he, defendant, had purchased said note and owned the same, and claimed to be an innocent purchaser thereof before maturity and without notice of any usurious consideration in, or any usurious contract relating to, said note; that the said plaintiff charged that this defendant was not an innocent purchaser of said note, and alleged that he never would pay the same; that thereupon said defendant threatened and was about to immediately take possession of the property conveyed by the mortgage given to secure the payment of said note; that finally, after various altercations and mutual threats, the said plaintiff having duly counseled with his attorney agreed to pay said note, and did pay the same before said note became due. And the matters and things alleged for and against said note were then and there, on the 11th day of March, 1885, settled and adjusted between said defendant and plaintiff. The said defendant Bentley, from and after the 3d day of March, 1885, had no interest, direct or indirect, in said note, but this defendant was the *bona fide* owner thereof from said date until the date of its payment.

. That on the 10th day of March, 1885, and at divers times thereafter before the 30th day of April, the plaintiff, John Wilhelmson, told this defendant that he, plaintiff, had on said date made the six notes described in his petition as made of that date for the consideration of six hundred and sixty-five dollars, then borrowed by said Wilhelmson of said Bentley and received by said plaintiff, and that there was no usurious consideration in or usurious

contract concerning said notes, but that said notes were free from all taint of usury, and that this defendant, at or near the 30th day of April, 1885, counseled with said plaintiff as to this defendant purchasing said notes, and in all of said counseling and conversation he, the said John Wilhelmson, asserted that the said notes, were free from any usurious taint, and should and would be paid, and thereupon this defendant, relying upon the statements of said plaintiff, and with the knowledge and consent of said plaintiff, on the 30th day of April, 1885, purchased the five of said notes then unpaid from said defendant Bentley, for a good and valuable consideration, and without any actual or any notice that there was any usurious consideration in, or any usurious contract concerning, said notes, and ever since said date and now is the *bona fide* owner of said notes. 'The said plaintiff, Kate Wilhelmson, is a surety on' said notes. That the real consideration of said six notes was six hundred and sixty-five dollars then and there borrowed from said Bentley by said Wilhelmson, and there was no usurious consideration in, or any usurious contract concerning, said six notes; that in all the altercations between said defendant and the plaintiff, John Wilhelmson, in regard to said six hundred dollar note, the said plaintiff admitted that there was a large amount due said defendant Bentley from plaintiff on said six hundred dollar note, after all amounts paid thereon had been deducted, and after all sums charged by plaintiff to have been usurious interest had been deducted therefrom, to-wit, the sum of ......, which plaintiff Wilhelmson expressly admitted to be due thereon after all deductions should be made for usurious interest and amounts paid by said Wilhelmson, and that plaintiff assured said defendant that the six notes in controversy were all right and should be paid, and defendants, relying on said assurances and admissions, purchased the five of said notes in controversy as aforesaid, etc.

The defendant, M. R. Bentley, answered, denying each and every allegation in the plaintiffs' petition contained, except the making of the notes by plaintiffs as set out in their said petition, which he admits; alleges that on the ...... day of ........., 1885, and before the said notes became due, and for a valuable consideration paid to him by defendant Potter, defendant sold, assigned, transferred, endorsed, and delivered the four one hundred and ten dollar notes, dated March 10, 1885, and the note for one hundred and fifteen dollars, dated March 10, 1885, and due September 10, 1885, to the said Potter; that said sale was genuine and *bona fide,* and without collusion or conspiracy between defendant and his codefendant Potter; that said defendant Potter is now, and has been ever since the transfer thereof, the absolute owner and holder of said notes and mortgage, and defendant has not now, nor has he at any time since had possession, control, interest in, or right to, the possession or control thereof, or any of them, direct or indirect, in said notes, or either of them, or the proceeds thereof, and he disclaims all right, title, and interest in and to said notes, or any of them, or the mortgage given to secure the same, with prayer for judgment, etc. There was a reply as to each answer, consisting of general denials.

There was a trial to the court, and findings and judgment as follows : " The court finds for the plaintiffs as to, the two first notes of one hundred and ten dollars each. First payable May 10, 1885, and second payable June 10, 1885, and that the same be canceled, and the balance of notes, amounting to $335, held valid, but without interest, and injunction be dissolved as to them, and that plaintiffs pay all the costs of this suit. It is therefore ordered, adjudged, and decreed that the injunction issued in this cause restraining and enjoining said defendants from selling, negotiating, transferring, or otherwise disposing of said two first notes for one hundred and ten dollars each, the

first payable May 10, 1885, and the second payable June 10, 1885, be sustained and made perpetual, and the defendants are ordered to cancel the same. And it is further ordered and decreed that the balance of said notes, amounting to three hundred and thirty-five dollars, are valid, legal, and binding, but are without interest, and that said injunction be and the same is hereby dissolved and annulled as to them, and the plaintiffs pay the costs of this suit."

Both parties appealed to this court.

There was, as shown by the bill of exceptions, a large amount of testimony, much of which is conflicting. But it pretty clearly establishes the fact that, in 1883 plaintiff John Wilhelmson bought of defendant Bentley two separate lots of cattle on credit, Bentley taking separate notes therefor; that in each of said notes there was, in consideration of such credit, added a certain sum as bonus or premium, and each note called for ten per cent interest from date; that there were sundry payments made on these notes and renewals thereof, and at each time the renewal note was made to represent and contain, in addition to the amount represented in and by the canceled note and legal interest thereon, a sum in addition thereto as a bonus or premium for such renewal and additional indulgence. On the 29th day of September 1884, the said indebtedness was renewed by the said John Wilhelmson and his wife— the plaintiffs—giving the said Bentley two notes, one for six hundred dollars and one for one hundred and fifty dollars. The last named note was soon afterwards paid in full and taken up. The note for six hundred dollars matured March 10, 1885. John Wilhelmson testified, when on the stand as a witness on the part of the plaintiffs, that, on the 11th day of February, 1885, he paid Bentley $84.25 to apply on the six hundred dollar note, and then told Bentley that he had paid enough; there were high words between them; that he, Wilhelmson, was advised by

his attorney that there was danger that Bentley would sell and endorse the note to an innocent purchaser, and thus deprive him of the defense of usury, and that he should notify such parties as would be likely to buy the note of its usurious character; that pursuant to such advice he went to the defendant Potter and notified him, and thereupon Potter replied that he had already purchased the note; that there was considerable altercation between Wilhelmson on the one part, and Potter and Bentley on the other part, as to the usurious character of the note, and as to the *bona fides* of its transfer and endorsement from Bentley to Potter; Potter notified Wilhelmson that he would seize the mortgaged cattle and foreclose the mortgage.

The parties, Bentley, Potter, and Wilhelmson, then, on the 10th day of March, 1885, met at the house of the latter, and the plaintiffs executed and delivered to Bentley six notes, payable to him, five of which were for $110 each, payable on the 10th days of April, May, June, July, and August, respectively, and one for $115, payable on the 10th day of September following, and gave a mortgage to secure the same on the cattle covered by the previous mortgages, and also on certain horses, farming implements, and other property not covered by other mortgages. The plaintiffs and other witnesses present at this transaction testified that these notes and mortgage were given in renewal of the $600 note, and that said note was then and there given up by Bentley or Potter to John Wilhelmson, while Potter and Bentley testified that the six hundred dollar note was not there at the time, but that it was agreed that Bentley was to pay Potter the amount of said note the next day, but that Potter was not to give the note up to Bentley, but to retain and afterwards deliver it to Wilhelmson, which Potter testified that he afterwards did. The plaintiffs also testified that while this transaction was taking place Wilhelmson repeatedly declared that the con-

sideration for said notes was usurious, and that they would not be paid. This was also corroborated by other members of plaintiffs' family, who testified at the trial, and contradicted by the defendants. Of these last notes, the one falling due April 10th was paid and taken up. The other five were endorsed by Bentley to Potter before maturity, and form the subject-matter of this controversy.

The case of *Farwell v. Meyers*, 35 Ill., 40, was in most respects similar to the one at bar, the principal distinction being that there had been a judgment rendered on a cognovit against one Zimmerman and Farwell, the latter being security. Farwell brought his bill in equity, and had an injunction against the judgment, claiming that the holders of the note had released him by giving time to his principal without his consent, and claiming that certain payments of usurious interest should be credited on the judgment. He failed in his proof of the extension of time to Zimmerman, and the superior court dismissed the bill. On error to the supreme court the judgment of the superior court was reversed. The court, in the opinion, say: "Although usurious interest voluntarily paid since the passage of the act of 1857 cannot be recovered back, still, so long as any part of the debt remains unpaid, the debtor may insist upon a deduction of the usury therefrom. The usury received is considered as having been extorted by means of the debt, and is to be applied in part payment of the same." See also *N. E. M. S. Co. v. Aughe*, 12 Neb., 504, cited by counsel for defendant Potter, and cases there cited. I think in a case where there are outstanding notes against a party, a great part of which represents usurious interest on former evidences of debt which have been renewed, and such usurious interest made to represent principal, and there is reason to fear that the holder of the notes will, instead of bringing suit on such notes, transfer them to other parties before maturity, the debtor may take the initiative and proceed in the nature of equity and by

the aid of injunction. Whether in such case he should not tender or bring into court and offer to pay the amount actually owing, without usury, is not presented or discussed in the case, and is not considered.

The district court found that two of the notes enjoined, amounting to the sum of two hundred and twenty dollars, represented usurious interest. I cannot say that it was without sufficient evidence before it to justify and sustain such finding.

The judgment of the district court is affirmed, and as both parties appealed to this court, the costs here will be divided equally between them.

JUDGMENT ACCORDINGLY.

THE other judges concur.