THE FIDELITY LOAN GUARANTEE COMPANY, Plaintiff in Error, v. JOSIE M. BAKER, Defendant in Error.

### Kansas City Court of Appeals, May 1, 1893.

1. **Guaranty:** PAYMENT: NOTE: MORTGAGE. A mortgage securing a note given as payment for the guaranty of a mortgagor's note to a third person may be enforced.

2. **Usury:** NOTES GIVEN AS GUARANTY FEES: AGENCY. Notes for usury cannot be enforced though in form they appear to be given in payment of guaranty fees, nor where the guaranteed note is made for the benefit of the guarantor and the fee note is taken merely to represent the interest on the guaranteed note.

3. ———: PROOF OF: EVASION OF STATUTE. It is not necessary to prove an agreement to pay usury by positive testimony, for such an agreement may be inferred from all the facts and circumstances in the case; and there is no devise or shift to evade the statute under or behind which the law will not look in order to ascertain the real motive of the transaction, and no act, however solemnly executed, will stand in the way of getting at the truth.

*Appeal from the Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*William J. Scott*, for plaintiff in error.

(1) There is not a particle of evidence in this case that brings it within the class of cases to which the usury acts, pp. 169, 70, 71, Laws of 1891 apply.   (2) The burden of proof is on the defendant to show that plaintiff exacted usurious interest. Usury Act, pp. 170, 171, approved April 21, 1891; is repealed by Interest Act, pp. 169, 170, Laws, 1891, approved April 23, 1891.

*Garner & Walsh*, for defendant in error.

(1) The defendant insists that the lien of the mortgage under which plaintiff claims the right to possession of the property is invalid and cannot be enforced for the reason that plaintiffs exacted usurious interest for the indebtedness secured by the mortgage.   Laws of Missouri, 1891, sec. 2, p. 171; *Wetherell v. Stewert*, 35 Minn. 496; *Meyer Bros. v. Cook*, 85 Ala. 417.   (2) The question as to whether the notes secured by the mortgage were given for usurious interest, was properly a question for the jury.   Parsons on Contracts [7 Ed.] pp. 117, 118, 119; *More v. Clymer*, 12 Mo. App. 19; *Wickersham v. Jarvis*, 2 Mo. App. 281; *Chase v. N. Y. Mortgage Co.*, 51 N. W. Rep., p. —.   (3) The express agreement to pay usury need not be proven by positive testimony, but the same may be inferred from circumstances.   *Train v. Collins*, 2 Pick. 144; *Stein v. Stevenson*, 46 Minn. 360; *Sylvester v. Swan*, 5 Allen, 134; *Pulnam v. Churchill*, 5 Mass. 516; *Stevens v. Davis*, 3 Met. 21; *Snow v. Nye*, 106 Mass. 413; 3 Parsons on Contracts [7 Ed.] pp. 117–18–19.

SMITH, P. J.—The evidence covering over a hundred pages of the abstract of the record, which we have

been obliged to peruse, tends to establish substantially this state of facts. The defendant and her husband had executed a note for $150 secured by a mortgage on their boarding house furniture. Some time after this the defendant procured a divorce from her husband. On the thirtieth of November, 1891, the holder of the note which had been given by defendant and her husband sent the defendant word that he was going out of the loan business and to come to his office, as he wanted to transfer his mortgage. The plaintiff went to the office of the holder of the mortgage where she met a Mr. Davis, who afterwards turned out to be the manager of the plaintiff corporation, and who informed her that he would take up the mortgage. The plaintiff then executed a note for $151.25, payable to Paul Teutsch due May 12, 1892, and a mortgage on the property covered by the mortgage given by her husband and herself. On the same day she executed five promissory notes to plaintiff for $7.50 each to secure which she executed another mortgage on the same property. At the time she executed these obligations she paid Mr. Davis $10.50 in cash.

The evidence is conflicting as to whether the five notes and the cash paid was for the monthly interest on the large note or was the consideration for the services of the plaintiff in procuring the $151.25 loan for six months and guaranteeing its payment. It is made doubtful under the evidence whether Paul Teutsch was the true or assumed name of a person. His relation to the plaintiff does not appear except by inference. He seems to have resided in Chicago, and by an arrangement with Davis agreed to loan money on Kansas City chattel mortgages if Davis would get the plaintiff to establish a branch office in that city, and when so established it would guarantee the payment of such chattel

mortgages.    The plaintiff thereafter opened an office in Kansas City and Davis became its business manager. The manner in which Teutsch carried on his business relations with plaintiff was that when plaintiff would negotiate a loan on a chattel mortgage Teutsch was made mortgagee.    The mortgage note was taken to the Metropolitan bank, where Teutsch kept money on deposit, and where it would be taken and the amount of it less eight per cent. would be charged to Teutsch's account and the note sent to him.    The plaintiff when taking the note and mortgage for Teutsch would also take notes and a mortgage to itself to secure such notes, the notes corresponding in number to the number of months the Teutsch mortgage debt in any case would have to run, the amount of each of these smaller notes being equal to five per cent. and upwards of the principal mortgage debt.    There was evidence, too, to the effect, that, when any mortgage note so taken by Teutsch was not paid at maturity, the plaintiff would take up such note under its guaranty and then proceed to enforce the mortgage as owner of the debt,    It was by this course of dealing that plaintiff acquired the larger mortgage note in this case.

The plaintiff itself seems nearly as much of a myth as Teutsch.    The business methods of both of these parties appear from the evidence to have been strangely devious and complex.    It is made to appear that Teutsch, a Chicago capitalist, was in the habit of loaning his money at the modest rate of eight per cent. in Kansas City on chattel mortgages covering such personal property as old and well-worn boarding-house furniture when guaranteed by the plaintiff corporation, whose capital as far as the evidence discloses is invisible.    It appears that the plaintiff is the only party that realized any profit or advantage from the Teutsch transactions.    Whether Teutsch was interested in the

plaintiff corporation or whether the latter was the agent of the former or in any way participated in the profits of the plaintiff or what was the business scheme of these parties or their purposes, were largely matters of inference to be deduced from the evidence by the triers of the fact.

The court by an instruction given on its own motion told the jury that the plaintiff had the legal right to guarantee the payment of the defendant's note and charge the fees therefor evidenced by the five notes, provided this was the real consideration for which such notes were given.

And at the instance of the defendant it instructed the jury if they believed that plaintiff's agents were also agents of Teutsch in procuring the loan of the money, and that the claim of plaintiff, the five notes in question, were each received by plaintiff as a consideration for guaranteeing the payment of the note to Teutsch, was a mere pretext and attempt to evade the law against taking more than eight per cent. per annum by way of interest and commission brokerage under the form of a guarantee, or, that even if the mortgage and note were in the first instance made payable to Teutsch, yet if it was really made for the benefit of plaintiff and that the five smaller notes were taken merely to represent the interest on the Teutsch note, the verdict should be for the defendant. These instructions, we think, announced correct rules of law as applicable to the facts which the evidence tended to establish. Whether or not the five small notes were given for usurious interest was a question for the jury to determine under the evidence and instructions.

And it was not necessary to prove an express agreement to pay usury by positive testimony, for such an agreement may be inferred from all the facts and circumstances in the case. *Train v. Collins*, 2 Pick.

144. And whether or not the five small notes and mortgage claimed by plaintiff to have been received as a consideration for guaranteeing the payment of the Teutsch note was a mere pretext and attempt to evade the statute prohibiting the taking of more than eight per cent. interest was, too, a question for the jury which was properly submitted to them. *Avery v. Crugh*, 35 Minn. 456. There is no device or shift to evade the statute under or behind which the law will not look in order to ascertain the real motive of the transaction, and no act, however formal however solemnly executed, will stand in the way of the court getting at the truth in order to ascertain whether there has been an attempt to evade the statute. And the contract will not be held good merely because upon its face and by its words it appears free from the taint of usury. 3 Parsons on Contracts, 117, 118 and 119; *Stein v. Swensen*, 46 Minn. 360; *Sylvester v. Swan*, 5 Allen (Mass.), 134. No error was committed by the court in either giving or refusal of instructions.

Nor is it perceived that the court erred in respect to the admission or rejection of any evidence.

The defense in this case was in its nature that of fraud and the court was justified in permitting it to take, as it did, quite a wide range with the view of uncovering what seems to have been an artful scheme to evade the provisions of the statute prohibiting the receiving or exacting of usury. Session Acts, 1891, p. 170.

The judgment is manifestly for the right party and must be affirmed. All concur.