FRANCIS M. BELL, Respondent, v. JOHN MULHOLLAND et al., Appellants.

St. Louis Court of Appeals, December 3, 1901.

1. **Assignment of Wages.** An assignment of prospective wages, to be earned under an existing employment of either certain or uncertain duration, if made in good faith for a valuable consideration, is upheld, by the courts, whether intended as a security for present or future advances, or as an outright sale.

2. ———: ASSIGNMENT OF WAGES, WHEN ASSIGNOR HAS NO PRESENT EMPLOYMENT. But if the assignor has no employment at the date of the assignment, which is executed in contem-

Bell v. Mulholland.

plation of a possible future employment it may attach to, the contract is invalid.

3. ———: ———. A mere possibility coupled with no interest is not assignable.

4. **Pledges and Mortgages:** WHEN MADE TO SECURE A LOAN BEARING EXCESSIVE INTEREST. All pledges and mortgages to secure a loan bearing excessive interest are made invalid by the statutes of this State, in the hands of the lender.

5. ———: ———: ———. And the court will treat them as nullities whenever they show the plague-spot of usury, however complicated, ingenious or seemingly fair they may be.

6. **Equity:** DEBTOR: CREDITOR. A debtor's hands are clean enough to appeal to a court of equity for relief against usury, and an exacting creditor, when he has fully paid his lawful indebtedness.

7. ———: ———. The law imputes all the guilt to the lender, in such a contract, and excuses the borrower from blame as a *particeps criminis*, on the theory that the latter was overmatched or coerced by want.

8. ———: INJUNCTION: USURY. And equity courts will grant injunctive or other equitable relief in such cases, when the statute makes the prohibited securities utterly void so far as the enforcement by the usurer is concerned.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

This is an action in the nature of a suit in equity. Its purpose is to enjoin the appellants from filing with the Wabash Railway Company certain assignments of salary executed by the respondent.

The record is voluminous. There are several lengthy exhibits, and we can not burden the statement with a copious recital of the testimony, or with copies of said exhibits.

---

Bell v. Mulholland.

---

The question at issue is whether the transactions between the parties which form the subject-matter of the controversy, were bona fide sales from time to time, of monthly installments of salary earned by the respondent as an employee of said company, or a loan or loans made by the appellants to the respondent, on which usurious interest was charged.

The appellant Mulholland, had a brokerage office in the Century Building, in the city of St. Louis, where he bought salaries, special taxbills, mercantile paper and other securities, and, perhaps also, lent money at excessive rates of interest; although it is strenuously denied that he made loans at all. Lennon and Palmer were his employees and in charge of said office.

Respondent claims that in November, 1897, and once or twice thereafter, he borrowed sums of money from Mulholland, aggregating one hundred and fifteen dollars, on account of which he has paid to Mulholland as much as one hundred and seventy dollars. When the first transaction occurred, Bell was required to make an affidavit setting out, that, for the purpose of inducing Mulholland to buy his salary, to be earned as clerk of the Wabash Railway Company, he represented that no part of said salary had been advanced by the company and the company had no offsets against it; that he had given no assignment of any part thereof to another person, and that he did not believe he would be discharged, or quit his employment during the month the salary was to be earned. Then follow these clauses:

"I clearly know and intend that John Mulholland shall buy, absolutely, my said salary or wages, and expressly state that my application to him is not for any loan of money but for the sale by me and the purchase by him of said salary or wages.

"Each and every statement which I herein swear to is true and made for the express purpose of obtaining money from the said John Mulholland by the sale to him of said salary or wages.

"I have this day given said John Mulholland an assignment in blank for my salary or wages which is made a part hereof and numbered correspondingly, with full authority for him to fill out and to present same to my employer, or any succeeding employer, for collection if I should at any time, *while indebted to said John Mulholland,* fail to comply with the terms of my contract with him."

Contemporaneously with and as a part of the transaction, respondent executed and delivered to Mulholland an agreement, whereby Mulholland appointed respondent his agent to collect the salary assigned, from the Wabash Railway Company and pay the same to him, Mulholland. Said instrument provided that it should not divest Mulholland of the right to fill out and file the written assignment of the same with the Wabash Railway Company before or after the salary became due, and collect it himself, if for any reason he should see fit to do so. Another instrument was also executed, which was a blank form of assignment, executed by Bell, of his salary under his contract of employment for a month not designated. This instrument further made it a part of the contract, that if Bell failed to earn a salary of the amount involved in the assignment, the order for a warrant or check should continue in full force until a month's salary had been earned. Bell was earning eighty dollars a month.

The evidence shows that defendants had, or claimed to have, the right to fill in this blank assignment for any month's wages due Bell they chose.

Bell testifies that at the inception of the business between him and the appellants, he borrowed seventy-six dollars

from them and assigned them his salary for one month, being eighty dollars, and that continuously for two years or more, he paid them each month, four dollars out of his wages as interest.

Appellants, on the other hand, testify they bought his first month's salary for seventy-six dollars, and thereafter during the interval stated, regularly bought each month's salary, with a few exceptions. Their testimony is that in every instance, save when Bell did not comply with his contract, he collected his salary, paid the whole eighty dollars to them, and sold his salary for the succeeding month for seventy-six dollars. It seems matters had been settled up and they were even the first day of February, 1900; so the court below found. On that day a new contract of assignment, affidavit and appointment of Bell as agent to collect, were entered into between the parties, by which the salary for the month of February, was sold, as the appellants' claim, or a loan made, as respondent claims. Likewise, on said first day of February, respondent assigned to Mulholland sixty-seven dollars and fifty cents of his prospective salary for the month of March for sixty-four dollars and sixteen cents, or made a loan of the latter sum, and secured it by an assignment of said portion of his March salary. These transactions of February first, are claimed by appellant to have been based on the original affidavit made in November, 1897. Bell collected his salary for the months of February and March and kept it. Appellant threatened to file the assignment with the Wabash Railway Company in the following August, as the evidence tends to prove. That company has a rule against such assignments of salary by their employees, making it a sufficient cause for the discharge of an employee, that he was guilty of making them. One assignment made by Bell had been previously filed with the company, and he had then been warned and threatened. The evidence tends to show he

would have lost his position had the assignment in question been presented to his employers. The purpose of this action is, therefore, to enjoin appellants from presenting it.

The learned trial judge prepared an opinion containing a finding of the facts and a memorandum of his views of the law, which is so full and satisfactory that we would set it out did space permit. Suffice to say, that he found the February transactions were loans and the amounts which the respondent paid to the appellants, in excess of the amounts they paid to him, more than covered the sums advanced by appellants, together with legal interest. This is not denied by the appellants, if in truth the transactions were a loan. Their position is that they were sales of salary and not a loan.

*Seddon & Blair* and *Davis Biggs* for appellants.

(1) It is a principle universally recognized by the courts, that a contract can not be usurious unless the transaction is in substance and effect a loan or agreement for forbearance of payment of money or its equivalent. State v. Boatmens' Bank, 48 Mo. 189; Struther v. Drexiel, 122 U. S. 487; Lesley v. Johnson, 41 Barb (N. Y.) 359; Foote v. Emerson, 10 Vt. 338. (2) To constitute a loan there must be an agreement that the borrower will return at all events the thing loaned, or an equivalent in kind. Colton v. Dunham, 2 Paige (N. Y.) 267; Pomeroy v. Ainsworth, 22 Barb (N. Y.) 118; Kelly v. Lewis, 4 W. Va. 456; Tyler on Usury, 96. (3) The very essence of a usurious contract is that, for the loan or forbearance, a greater rate of interest than that allowed by law shall be paid or agreed to be paid. Lloyd v. Scott, 4 Pet. (U. S.) 205; Leavitt v. Delaney, 4 N. Y. 363; Belfour v. Davis, supra. (4) In order to taint a contract with usury it must in all cases be clearly shown that the contract was entered into with a corrupt, usurious intent; which

intent must be shared both by the lender and the borrower. The intent must be mutual. Murray v. Harding, 2 W. Bl. 865; Hotel Company v. Wade, 97 U. S. 13; Morton v. Thurber, 85 N. Y. 550; Security Co. v. Sanborn, 16 Neb. 689; Durant v. Banta, 27 N. J. L. 636; Tyler on Usury, p. 103. (5) Where the return of a sum of money advanced depends upon a contingency, such an advancement will not be construed as a loan within the meaning of the laws against usury. Spain v. Hamilton, 1 Wall. (U. S.) 604; Truby v. Masgrove, 118 Pa. St. 89; Goodrich v. Rogers, 118 Ill. 523.

*Thos. B. Harvey* for respondent.

GOODE, J.—We shall adopt the finding of the circuit court that the evidence showed the contracts between Bell and Mulholland, when stripped of their disguises, to be loans of money secured by assignments of Bell's monthly earnings. The real nature of the transactions was screened behind an unusually complicated mass of affidavits, contracts of agency and assignments, adapted equally to purchases in good faith of wages to be earned, and to advancements of money secured on such wages. The seeming earmark of a loan appears in the affidavit, where it speaks of Bell having given Mulholland an assignment in blank of his salary, with full authority to fill out and present the same to his employer, or any succeeding employer, for collection, if Bell should at any time *while indebted to said John Mulholland,* fail to comply with his contract. Still, that might not be conclusive in every case. It must be weighed in connection with all the circumstances and the positive testimony of the witnesses. Likely, most of Mulholland's business was legitimate. An assignment of prospective wages to be earned under an existing employment, of either certain or uncertain duration, if made in good faith for a valuable consideration, is upheld, whether intended as

security for present or future advances, or as an outright sale. But if the assignor has no employment at the date of the assignment, which is executed in contemplation of a possible future employment it may attach to, the contract is invalid. This is because a mere possibility, coupled with no interest, is non-assignable. Emery v. Lawrence, 8 Cush. (Mass.) 151; Mulhall v. Quinn, 1 Gray 105; Hawley v. Bristol, 39 Conn. 26; Augur v. N. Y. Belting & Packing Co., Id. 536; Thayer v. Kelly, 28 Vt. 19; Garland v. Harrington, 51 N. H. 409; Jermyn v. Moffit, 75 Pa. St. 399; Ruple v. Bindley, 91 Pa. St. 296; Payne v. Mayor of Mobile, 4 Ala. 333; Greene v. Bartholomew, 34 Ind. 235; Billings v. O'Brien, 14 Abb. Pr. (N. S.) 246; Field v. Mayor of New York, 6 N. Y. 179. Respondent was regularly employed when he made the assignments in question, which covered wages due, or to become due for his services; hence, they were valid, unless made to secure the payment of money borrowed; in which case they were usurious. As to all assignments of wages being void because against public policy, it may be said that such contracts have long been enforced within the limit stated, and if they are obnoxious to the policy of the State, it is the function of the Legislature, not of the courts, to invalidate them. The best evidence of a public policy as to a contract or matter not involving moral turpitude, is the action or non-action of the public through its lawmaking representatives. No statute in derogation of the right to assign wages having been enacted in this State, they stand on the same footing as other contracts. The question is, then, were those involved in this controversy legitimate sales or illegitimate loans? This depends on what was the intention and understanding of both parties; not merely of the respondent, who claims he borrowed money, but likewise of Mulholland or his employees who, he claims, loaned it. As said, we accept the finding of the circuit court that they were loans and void. All pledges

and mortgages to secure a loan bearing an excessive interest are made invalid by the statutes of this State in the hands of the lender, and the courts will treat them as nullities whenever they show the plague-spot of usury, however complicated, ingenious or seemingly fair they may be. Numberless decisions have so held. R. S. 1899, sec. 7310; Fidelity Loan Guar. Co. v. Baker, 54 Mo. App. 79; Voorhis v. Staed, 63 Mo. App. 370; Davis v. Akers, 73 Mo. App. 531; Tolman v. Union Casualty Co., not yet reported.

The point is made that respondent ought to be denied equitable relief because he participated in the illegal contracts—has unclean hands. Courts of equity are not so fastidious as to stand by while statutes of the kind in question are ignored, on the assumption that a participant is not saintly enough to enter their precincts. A chancellor should be "a creature not too bright or good, for human nature's daily food." The doctrine of "clean hands" goes far, but not that far. A debtor's hands are clean enough to appeal to an equity court for relief against a usury-exacting creditor, when he has fully paid his lawful indebtedness. The law imputes all the guilt to the lender and excuses the borrower from blame as *particeps criminis,* on the theory that the latter was overreached or coerced by want—a legal fiction obviously, the true reason of the rule being that, to effectively enforce the law, courts must heed the prayers of debtors; as they must likewise let in parol proof to vary written instruments of this class by showing a contract valid on its face, to be a security for a usurious loan. Ferguson v. Stepbern, 3 Gilm. (Ill.) 547; Pope v. Marshall, 78 Ga. 635. Otherwise, in the language of an eminent jurist, used in discussing this subject: "A statute made to prevent fraud and oppression would be made the instrument of fraud." 1 Story's Eq. Jur. (13 Ed.), sec. 301; Chitty on Contracts (12 Ed.), 674. Equity courts grant injunctive or other equitable relief in such cases,

if there is ground for their interference; especially when the statute makes the prohibited securities utterly void so far as enforcement by the usurer is concerned, as ours does. 1 Story's Eq. Jur. (13 Ed.), secs. 300, 301; 1 High on Injunctions, sec. 76; Id. sec. 1116; Hewitt v. Dement, 57 Ill. 500; Morgan v. Schermerhorn, 1 Paige 544; Binford v. Boardman, 44 Iowa 53; Bowen v. Phillips, 55 Ind. 226; Wilhelmson v. Bentley, 25 Neb. 473; Rodgers v. Rathbun, 1 John Ch. 366; Tupper v. Powell, Id. 439; Fanning v. Dunham, 5 John Ch. *122. No right can be obtained or asserted on these tainted instruments.

One of the ancient instances of equitable cognizance was relieving a debtor against the penalty of a bond to pay double the sum borrowed, in case of default of payment when due, by compelling the lender to take his principal and legal interest.

The judgment is affirmed. *Bland, P. J.,* concurs; *Barclay, J.,* having been consulted, did not sit.