**Laurie FREEMAN and Martin Reid, Individually and on Behalf of Themselves and All Persons Similarly Situated, Appellants,**

v.

**HAWTHORN BANK, Respondent.**

**WD 79534**

Missouri Court of Appeals, Western District.

Filed: April 18, 2017

James P. Frickelton, Edward Robertson, III, Kirk Goza, Leawoodk, KS for appellants.

John C. Aisenbrey, George Francis, KCMO for respondent; Michael J. Schmid, Jefferson City for MO Bankers Association.

Before Division Two: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick and Alok Ahuja, Judges

Lisa White Hardwick, Judge

Laurie Freeman and Martin Reid (collectively, "Appellants") appeal from the judgment in favor of Hawthorn Bank ("Hawthorn") on their class action petition alleging that Hawthorn's automated debit card overdraft program violates Missouri's usury law. Appellants contend the circuit court erred in holding that Hawthorn's debit card overdraft fee is a statutorily-permitted service charge imposed on a deposit account and, therefore, is not subject to the state's usury law. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Hawthorn is a Missouri-chartered bank and member of the Federal Deposit Insurance Corporation ("FDIC"). Hawthorn offers checking account services to its customers, who can access funds in their checking account by check, debit and ATM card, or ACH.[1]

This case concerns only debit and ATM card transactions, which the parties refer to collectively as "debit card transactions."

---

1. An ACH (Automated Clearing House) transaction is an electronic funds transfer, such as a direct deposit of payroll into a customer's checking account or a pre-authorized mortgage payment from customer's checking account.

Debit card transactions typically proceed in two steps: authorization and settlement. In the first step, the customer swipes a debit card through the merchant's card reader, which electronically submits an authorization request for the proposed transaction to Hawthorn. Hawthorn's computer system automatically determines whether the debit card transaction is payable under the customer's available checking account balance. A customer's available balance for a debit card transaction is the prior day's ending balance plus any pending credits and minus any debits. If there is a sufficient available balance, the transaction is authorized. For debit card transactions, authorization is generally an automated decision. If Hawthorn authorizes the transaction, it is obligated to honor that transaction when the merchant presents it for payment through the second step, which is the settlement process. Although Hawthorn's decision to authorize a debit card transaction occurs immediately, it can take two to three days before that transaction is presented to Hawthorn for settlement and is posted to the customer's checking account.[2]

When Hawthorn initially offered debit cards in the 1990s, the bank did not have an overdraft program for debit card transactions and, instead, configured its computer system to automatically reject debit card overdrafts.[3] When Hawthorn's competitors began offering overdraft programs, however, Hawthorn became concerned that it might lose business because

its customers were asking for such a program.

Consequently, Hawthorn began providing customers with three options to protect against overdrawing their checking accounts. First, Hawthorn offers an account transfer service, which allows customers to link their checking account to another Hawthorn account from which the bank can transfer funds to prevent any overdrafts. Second, Hawthorn offers an overdraft line of credit from which the bank will lend funds to cover any overdrafts in the checking account. To use this option, the customer must apply for an overdraft line of credit. After a credit check, a loan officer will decide whether to approve the application. If the application is approved, then, in the event of an overdraft, Hawthorn will make a loan in increments of $100, as necessary, to prevent the checking account from being overdrawn. Hawthorn charges interest pursuant to the line of credit's terms on any amounts deposited into the checking account from the line of credit.

The third overdraft protection option, and the one at issue in this case, is Hawthorn's Bounce Protection Program for debit card transactions.[4] Under this program, Hawthorn allows customers to overdraw their checking account up to a predetermined amount, which is $500. The Bounce program is offered only to bank customers for checking accounts for which the primary owner of the account is age 18 or older, has made deposits totaling $500 or

2. "Posting" is the procedure the bank uses to process debits (withdrawals) and credits (deposits) to a customer's checking account. Hawthorn posts all credits and debits to a customer's account once each day, after the close of business. The posting process adds all credit items received by the bank during the preceding business day to the account balance and subtracts all debit items received for payment from the account balance.

3. An overdraft occurs when, after all credits and debits are posted on a particular day, the checking account balance is negative.

4. The Bounce program is also available for other checking account transactions, such as checks and ACH. This case concerns only the Bounce program as applied to debit card transactions.

more, and has had no overdrafts in the first 30 days after the account's opening.

Before July 2010, Hawthorn customers who met the eligibility requirements were automatically enrolled in the Bounce program. Since July 2010 and pursuant to Federal Reserve Board Regulation E, Hawthorn has required customers to affirmatively opt in to the Bounce program for debit card transactions. If a customer does not opt in to the Bounce program for debit card transactions, then Hawthorn will not authorize any debit card transaction that would result in an overdraft.

In general, when a customer opts in to the Bounce program, all debit card transactions that result in overdrafts are approved according to the program's parameters. However, Hawthorn does retain the discretion to not offer, to suspend, or to remove Bounce protection from the customer's account at any time. Also, the customer always has the option to remove Bounce protection from an account.

Under the Bounce program, Hawthorn charges an overdraft fee to a customer's checking account for each overdraft item.[5] A checking account can be assessed a maximum of six overdraft fees per day. From 2007 to January 2013, Hawthorn's overdraft fee was $25. It was then raised to $30.

Hawthorn set this overdraft fee after analyzing what its competitors in state and national banks in Missouri were charging. In 2011, Hawthorn's competitors' overdraft fees ranged from $17 to $38. Hawthorn set its overdraft fee at an amount that was not overly burdensome to the customer but was high enough to act as a deterrent against potential abuse of the Bounce program and to allow the program to operate in a safe and sound manner according to Hawthorn's regulators. The overdraft fee must also generate sufficient revenue to compensate for the risks and costs associated with the Bounce program. Costs of the Bounce program to the bank include: software, mailing, employee time, training, refunds of overdraft fees, and overdrawn checking account balances that must be charged off. There is no relationship between the flat overdraft fee charged and the amount of the overdraft or the period of time the overdraft exists in the checking account.

Hawthorn does not charge an overdraft fee for payment of an overdraft item that causes a negative account balance of less than $10. Also, Hawthorn does not charge a fee for a non-authorized debit card transaction because that transaction was never presented for settlement. Customer service representatives, branch managers, and bank officers have the authority to refund or reverse an overdraft fee upon a customer's request, on a case-by-case basis. In considering whether to refund an overdraft fee, Hawthorn looks at the bank's overall relationship with the customer, whether the customer habitually overdrafts the account, and the situation that caused the overdraft. From 2008 to July 31, 2012, Hawthorn refunded or reversed in excess of $4.7 million in overdraft fees.

Hawthorn expects its customers to make a deposit into their checking account to cover any overdraft within three to five business days. Customers who fail to bring their account to a positive balance within 49 days have their accounts closed and the closed account is reported to TransWorld

---

**5.** Hawthorn does not charge the overdraft fee for a "daylight overdraft." A daylight overdraft occurs when a customer's available balance is insufficient to pay for a transaction at the time of authorization, but, later, at the time of settlement, the customer's available balance is sufficient.

for collection activity and to ChexSystems, a verification system that informs banks whether an individual has had excessive insufficient funds activity or charge-off accounts with other banks.

Hawthorn offers the Fresh Start program to Bounce program customers who have had Bounce protection revoked due to their account's being overdrawn for 30 or more consecutive days. Under Fresh Start, the customer signs an agreement to repay the amount owed over a six-month or twelve-month period. The customer's account is then brought to a zero balance, and the customer may continue to use the account. No interest is charged to the customer under the Fresh Start agreement. Customers in the Fresh Start program are not reported to TransWorld for collection or reported to ChexSystems as a charged-off account.

Hawthorn undergoes annual examinations either by the Missouri Division of Finance or the FDIC. No regulators have ever told Hawthorn that it should not permit overdrafts, that a fee charged for an overdraft is interest, that the usury law applies to checking accounts, or that Hawthorn should take any corrective action regarding the Bounce program.

Appellants are former customers of Hawthorn and participants in the Bounce program. Freeman opened a checking account with Hawthorn in 2007 and applied for a debit card. Part of the reason she opened the account at Hawthorn was because she was interested in the Bounce program. Freeman wanted Bounce protection on her account and understood that she could cancel Bounce at any time. She used Bounce for both check and debit card transactions. Freeman tried to avoid overdrawing her account to avoid overdraft fees, but she occasionally incurred overdraft fees. Freeman closed her account with Hawthorn in 2010 and opened an account at US Bank, where she signed up for overdraft protection.

Reid opened a checking account at Hawthorn in 2009 and received a debit card. He was automatically placed in the Bounce program at that time and, pursuant to Regulation E, opted in to the Bounce program in 2010. He understood that he could remove Bounce from his account. Reid used Bounce for both check and debit card transactions. He was typically aware of when transactions would overdraw his account, but he wanted the overdraft transactions to be paid and was aware that he would be charged a fee if they were. Eventually, Hawthorn closed Reid's account with a negative balance. Reid currently has a checking account at Regions Bank, which he selected, in part, because it offered overdraft protection.

Appellants filed a class action petition for damages against Hawthorn. In their petition, Appellants alleged that Hawthorn's collection of overdraft fees on debit card transactions under the Bounce program violated Missouri's usury law. Appellants further asserted a claim for conversion and money had and received. The court certified a class consisting of:

All persons who were Missouri citizens as of November 16, 2010, and continuously remained Missouri citizens through September 20, 2013, and who at any time during the class period:

(a) Maintained an account with Hawthorn Bank; and

(b) To whom Hawthorn Bank, in the administration of its Automated Debit Card Overdraft Program, made one or more advances of less than $500 each on a debit card transaction; and

(c) From whom Hawthorn Bank thereafter collected in full each such advance within 30 days of such advance; and

(d) From whom Hawthorn Bank collected a charge of $25 or more for at least one of such advances.

The class period was the period beginning November 17, 2005, and ending September 20, 2013.

Following a bench trial, the court entered judgment in favor of Hawthorn. Appellants appeal.

## STANDARD OF REVIEW

In this bench-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Walton v. City of Berkeley*, 223 S.W.3d 126, 128 (Mo. banc 2007). Appellants' points assert error in the court's declaration or application of the law. We review such issues *de novo*. *Fastnacht v. Ge*, 488 S.W.3d 178, 183 (Mo. App. 2016).

## ANALYSIS

 The claims in Appellants' petition are premised on the assertion that Hawthorn's overdraft fee on debit card transactions under the Bounce program violates Missouri's usury law. Usury is "the exacting, taking or receiving of a greater rate of interest than is allowed by law for the use of loan of money." *Beneficial Fin. Co. of St. Charles, Inc. v. Kitson*, 530 S.W.2d 497, 502 (Mo. App. 1975). For a transaction to be usurious, "there must be a loan at more than the legal rate of interest, or the exaction of a greater rate of interest than the legal rate for the forbearance of a debt or

sum of money due." *Id.* Section 408.030.1,[6] establishes the maximum rate of interest allowable on any loan:

> Parties may agree, in writing, to a rate of interest not exceeding ten percent per annum on money due or to become due upon any contract, including a contract for commitment; except that, when the "market rate" exceeds ten percent per annum, parties may agree, in writing, to a rate of interest not exceeding the "market rate."

The elements of a usury claim are: "(1) an unlawful intent, (2) money or its equivalent, (3) a loan or forbearance, (4) the sum loaned must be absolutely, not contingently, payable, and (5) there must be an exaction for the use of the loan or something in excess of what is allowed by law." *Kitson*, 530 S.W.2d at 502. Usury is not presumed; the party asserting it bears the burden of proving it. *Id.*

In its judgment, the circuit court found that Section 362.111 permits Hawthorn's overdraft fees and that a Division of Finance interpretive letter issued in May 2011 pursuant to Section 362.106(4) confirms this interpretation of Section 362.111. Therefore, the court concluded that the fees are not subject to the usury law as set forth in Section 408.030.1. After reaching this conclusion, the court made additional findings regarding the nature of overdrafts and overdraft fees and concluded that overdrafts are not loans and overdraft fees are not interest for usury law purposes.

On appeal, Appellants' Point I challenges the court's holding that overdrafts are not loans; Point II challenges the court's holding that overdraft fees are not interest; Point III challenges the court's holding that Section 362.111 exempts over-

---

**6.** All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement, unless otherwise indicated.

draft fees from usury law; and Point IV challenges the court's application of Section 362.106(4) and reliance on the Division of Finance's interpretive letter to find that Hawthorn's overdraft fees are exempted from usury law.

Because it is dispositive, we will first address Appellants' Point III, which challenges the court's holding that Section 362.111.1 exempts overdraft fees from usury law. Resolution of this point is a matter of statutory interpretation. The goal of statutory interpretation is to ascertain the legislature's intent from the language used and to give effect to that intent if possible. *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 279 (Mo. App. 2000). We accord the language its plain and ordinary meaning, and where the language is clear, we must give effect to that language as written. *Id.*

During the class period of November 17, 2005 to September 20, 2013, Section 362.111.1 provided:

> 1. A bank or trust company may impose fees or service charges on deposit accounts; however, such fees or service charges are subject to such conditions or requirements that may be fixed by regulations pursuant to section 361.105 by the director of the division of finance and the state banking and savings and loan board. Notwithstanding any law to the contrary, no such condition or requirement shall be more restrictive than the fees or service charges on deposit accounts or similar accounts permitted any federally chartered depository institution.

The plain language of Section 362.111.1 allows a state-chartered bank to impose fees or service charges on deposit accounts, which includes checking accounts.

These fees or service charges are subject to conditions or requirements fixed by regulations promulgated by the director of the division of finance or by the state banking board; however, notwithstanding any other law to the contrary, those conditions and requirements cannot be more restrictive than the fees or service charges permitted on deposit accounts in federally-chartered institutions.

■ Appellants argue that Section 362.111.1 does not apply to Hawthorn's overdraft fee because the Bounce program is actually a loan contract; therefore, the fee or service charge is imposed on a loan and not on a deposit account. We disagree. While there is a contractual relationship between Hawthorn and its checking account customers, the Bounce program is not based on a loan contract but is a service offered in connection with a checking account that determines which transactions will be debited to the checking account.[7]

Appellants' assertion that a loan contract is created because Hawthorn promises to honor all overdraft transactions is refuted by the record. Hawthorn's Terms and Conditions for deposit accounts expressly disclaim any obligation to honor an overdraft transaction even if the bank had done so previously. In the opt-in form for Bounce protection, Hawthorn advises its customers, "We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction." Likewise, Appellants' assertion that a loan contract is created because customers promise to bring their account back to a positive balance within 30 days is also refuted by the record. It is true that Hawthorn encourages customers to make a deposit to their checking ac-

---

**7.** As we noted *supra,* in addition to the Bounce program, Hawthorn does offer an overdraft protection line of credit that charges interest. It is not at issue in this case.

count in an amount sufficient to cover any overdraft within three to five business days. Additionally, in the Bounce program brochure, Hawthorn advises its customers, "You should make every attempt to bring your account to a positive balance within 30 days" because at that point, Bounce protection will be suspended. Hawthorn's expectation, however, is not a promise made by the customer. Under the Bounce program, Hawthorn does not promise to pay all overdraft transactions and customers do not commit to paying all overdraft transactions within 30 days. The record does not support Appellants' contention that a loan contract is formed by a customer's participation in the Bounce program. Therefore, the overdraft fee is imposed on a deposit account, not on a loan.

▪ Appellants next contend the overdraft fee is not a fee or service charge but, is, instead, interest. The statutes do not define what constitutes a "fee" or "service charge." The dictionary definition of a "fee" is "[a] fixed sum charged, as by an institution or by law, for a privilege" or "[a] charge for professional services." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 647 (4th ed. 2006). The dictionary definition of a "service charge" is "[a]n additional charge for a service for which there is already a basic fee." *Id.* at 1591.

Appellants assert that, pursuant to these definitions, Hawthorn must provide services to its customers in connection with the Bounce protection overdraft fee for it to be considered a fee or service charge. The question of whether a financial institution provides valuable services in exchange

for a particular fee, and whether the fee charged is reasonable in relation to the services provided, are questions of fact on which we defer to the circuit court. *Stewart v. Boone Cty. Trust Co.*, 230 Mo.App. 120, 87 S.W.2d 223, 226 (Mo. App. 1935). Appellants contend there is no evidence that Hawthorn provides any services to its customers. We disagree.

In its judgment, the court specifically found that the Bounce program offers many services to customers, including: (1) the bank will honor a transaction that overdraws a checking account under certain pre-determined circumstances; (2) the bank will allow for "daylight overdrafts"; (3) the bank mails several different types of notices to customers, including notices each time items are paid under the Bounce program, notices that an account is overdrawn for 20, 30, and 40 consecutive days, notices that an account is closed and charged off, notices that participation in the Bounce program is revoked, and notices regarding alternatives to the payment of overdrafts and references to consumer credit counseling; (4) bank employees answer customer questions and inquiries about the Bounce program; (5) bank employees review several reports arising from the Bounce program every day to determine eligibility for the program and to determine whether accounts should be closed and charged off; (6) the bank considers, and at times, refunds overdraft fees; and (7) the bank allows customers to avoid negative credit reports and to continue to use their checking account through a non-interest bearing loan under the Fresh Start program.[8] The court further found that the

8. Appellants make much of the fact that most of these services occur after Hawthorn pays the overdraft. Appellants provide no support for their contention that the services provided in exchange for the overdraft fee must take place at the time or before the fee was in-

curred. The only charge for Bounce protection services is the overdraft fee. That the charge for these services is imposed up front does not mean that subsequent services provided as part of the program are not in exchange for the overdraft fee.

costs of the Bounce program to Hawthorn include: (1) the cost of the Pinnacle software; (2) mailing costs; (3) employee time; (4) training costs; (5) refunds of overdraft fees; and (6) overdrawn checking account balances that must be charged off. While some of the services Hawthorn provides may benefit the bank by supporting its efforts to collect the amount of the overdraft, any benefit to Hawthorn in giving customers notice that they have overdrawn their account or in allowing customers to avoid negative credit reports and to continue to use their checking account through a non-interest bearing loan is negligible compared to the benefit of these services to customers.

Appellants argue that the services and costs described in the circuit court's judgment are merely services and costs incidental to the decision to extend credit or to collect on delinquent loans, and that these services do not benefit depositors. The costs the circuit court identified, however, are all necessary to permit Hawthorn to make the Bounce program available to its customers. Moreover, this court has recognized that a late payment fee which assesses the costs of collecting past due accounts to delinquent customers is not interest, but the proper "allocation of the cost of service[s]" associated with the delinquencies. *State ex rel. Ashcroft v. Pub. Serv. Comm'n*, 674 S.W.2d 660, 662–63 (Mo. App. 1984), followed in *Seaton v. City of Lexington*, 97 S.W.3d 72, 76 (Mo. App. 2002). The services the circuit court found that Hawthorn provides—even those services associated with collection activities—establish that the overdraft fee is not interest.

Moreover, we note that Appellants admit that overdraft fees imposed for overdrawn *check* transactions are "fees or service charges" under Section 362.111.1. They argue that for check overdrafts, un-

like debit card overdrafts, Hawthorn actually provides a service because bank employees become involved and exercise discretion in determining whether to honor or or return a check. Appellants' argument ignores that Hawthorn also has discretion to authorize or to reject a debit card transaction. Because of the nature of debit card transactions, this decision is automated, but there is no legal requirement that a service cannot be provided by automation. Moreover, as the court noted in its judgment, the Bounce program is not entirely automated, as bank employees consider requests for refunds of overdraft fees, allow customers to participate in the Fresh Start program, answer customer questions and inquiries, and review and analyze daily overdraft reports. Viewed in the light most favorable to the judgment, the evidence supports the court's finding that Hawthorn provides services to its customers in connection with the overdraft fee for debit card transactions.

The structure of Hawthorn's overdraft fee also indicates that it does not constitute interest. We recognize that charges constituting interest may, in certain circumstances, be expressed as a flat charge rather than in the more familiar form of a percentage rate for a particular time period. *See Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 745, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). Nevertheless, the fact that Hawthorn's overdraft fee constitutes a predetermined amount, regardless of the amount of a particular overdraft or the amount of time before the customer deposits sufficient funds to cover the overdraft, suggests that the fee is a charge for providing overdraft protection services and not strictly a charge for the customer's use of Hawthorn's money. Therefore, under Section 362.111.1, the overdraft fee is a

"fee or service charge."[9]

■ Pursuant to the plain language of 362.111.1, Hawthorn, as a state-chartered bank subject to this statute, may impose the challenged overdraft fee, as a fee or service charge, on checking accounts where the holders have opted in to the Bounce program and overdrawn their accounts. Under the statute, Hawthorn's ability to impose the overdraft fee is subject to conditions or restrictions fixed by division of finance or state banking board regulations. Neither the director of the division of finance nor the state banking board has issued regulations addressing deposit account fees. Even if such regulations existed, they could not fix conditions or requirements that are more restrictive than the fees or service charges imposed by federally-chartered banks, "[n]otwithstanding any other law to the contrary." § 362.111.1. "[A]ny other law to the contrary" would include usury law. Because the evidence showed that federally-chartered banks in Missouri charge overdraft fees ranging from $33 to $38 per overdraft, Hawthorn's overdraft fees of $25 and $30 during the class period fall well within the range of fees imposed by federally-chartered banks. The plain language of Section 362.111.1 permits Hawthorn to impose the Bounce program debit card transaction overdraft fee and exempts the fee from the state's usury law.[10] Point III is denied. Because our denial of Point III is dispositive, we need not address Appellants' remaining points on appeal.

## CONCLUSION

The judgment is affirmed.

All Concur.

---

9. Prior to the 2003 enactment of Section 362.111, Missouri statutes authorized financial institutions to assess "overdraft charges" in specified amounts for checks and other similar instruments. §§ 408.653 and 408.654, RSMo 2000. Those provisions were repealed as part of the legislation that enacted Section 362.111 and the similar provisions for savings and loan associations and credit unions, Sections 369.159 and 370.073. It appears that Sections 362.111, 369.159, and 370.073 were intended to broaden the scope of the earlier provisions by authorizing the imposition of "fees or service charges" generally and by eliminating the dollar limitation previously found in Sections 408.653 and 408.654, RSMo 2000.

10. In 2015, the legislature amended Section 362.111.1 to add, at the end of the second sentence: "and no contractual fee charged for overdrawing the balance of a deposit account shall be deemed interest." § 362.111.1, RSMo Supp. 2015. Appellants assert that, by adding this language to Section 362.111.1, the legislature intended to change the statute to exempt overdraft fees from the usury law and that this exemption was not present until this amendment, which was enacted two years after the end of the class period. We disagree. "While an amendment to a statute must be deemed to have been intended to accomplish some purpose, that purpose can be clarification rather than a change in existing law." *Flipps Nine, Inc. v. Mo. Prop. & Cas. Ins. Guar. Ass'n*, 941 S.W.2d 564, 568 (Mo. App. 1997). In light of the fact that, in 2011, the division of finance issued an interpretive letter pursuant to Section 362.106 stating that the division has always treated overdraft fees differently from interest and considers them allowable fees under Section 362.111, we find that the 2015 amendment to Section 362.111.1 merely clarified, rather than changed, existing law.