## MISSOURI DISCOUNT CORPORATION, Respondent, v. FRED MITCHELL, Appellant.

### In the Kansas City Court of Appeals, April 7, 1924.

1. **USURY: Mortgages: Where Mortgage Securing Loan is Tainted with Usury the Same is Void: ''Exaction'' within Meaning of Statute Defined.** Under section 6492, Revised Statutes 1919, it is not necessary that usurious interest be actually received; if a rate higher than law allows is required and the agreement or understanding is that it be paid, then that is "exaction" of unlawful interest within meaning of section 6492, and where usurious interest is exacted mortgage securing loan is void.

2. ———: **Statute Intended to Prevent Usury Should be Liberally Construed.** Section 6492, Revised Statutes 1919, being intended to prevent usurious practices should be liberally construed so as to suppress the mischief and advance the remedy.

3. ———: **Whether Charges for Making Loan were Included Second Time in Mortgage by Mistake Held for Jury.** Where plaintiff, a loan and investment company, incorporated under sections 10189 and 10195, Revised Statutes 1919, financed sale of automobiles to retail dealer, question whether its charges for investigation, etc., in making loan, after being paid by retailer, were thereafter included by mistake in mortgage taken by plaintiff, *held* for jury.

4. ———: **Statute Authorizing Loan and Investment Companies, in Making Loans, to Charge for Expenses in Addition to Legal Rate of Interest Construed.** Under section 10192, Revised Statutes 1919,

Missouri Discount Corp. v. Mitchell.

authorizing loan and investment companies to charge, in addition to interest at legal rate of eight per cent per annum, one dollar for each fifty dollars or fraction thereof loaned, for expenses, permits such charge for expenses only when the expenses are actually incurred in good faith.

5. ———: Burden of Proof: Burden on Party Seeking to Impeach Transaction for Usury to Prove Illegal Intent. Since there is no presumption of an illegal or usurious intent, the burden rests upon the party seeking to impeach the transaction for usury to prove an illegal intent and that it was a cover for usury.

6. ———: Whether Charge for Loan Included Sufficient Items of Expenses Incurred in Good Faith to Show That no Usurious Interest was Exacted, Held for Jury. Whether charge made by plaintiff, loan company, for use of money loaned, included a charge for actual expenses incurred in good faith, in such amount to reduce the remainder of the whole charge to amount of interest allowed by law, *held* for jury.

7. INSTRUCTIONS: Instruction Assuming That Amount Charged as Expenses for Loan was for Expenses Incurred in Good Faith, Held Erroneous. Under section 10192, Revised Statutes 1919, authorizing a loan and investment company to charge legal rate of interest and one dollar for each fifty dollars loaned, for expenses incurred in good faith, an instruction that plaintiff, loan company, had right to charge one dollar for every fifty dollars loaned, for expenses, was misdirection and not mere nondirection, and therefore erroneous, as tacitly assuming that the amount charged as expenses was for expenses really incurred and in good faith.

Appeal from Circuit Court of Clay County.—*Hon. Ralph Hughes*, Judge.

REVERSED AND REMANDED.

*Craven & Bates* for appellant.

*William B. Bostian* for respondent.

TRIMBLE, P. J.—Plaintiff, as holder of a chattel mortgage given by Eby-Cheek Motor & Realty Company on an "Essex Coach Automobile built in 1922, Chassis No. 513,783 Motor No. 95,960" on which default had

been made, brought replevin to recover possession of same, it having been sold by the Eby-Cheek Motor Company to the defendant Fred Mitchell without mortgagee's knowledge or consent. At the trial, suit was dismissed as to the Eby-Cheek Motor & Realty Company, the defendant Fred Mitchell being in possession of the car at the time of filing the suit and refusing to give it up on demand. The petition, in the ordinary form of replevin, did not disclose on its face the grounds on which plaintiff claimed the right to the possession of the car. Defendant Mitchell filed answer setting up that he was the owner and entitled to the possession of the car, denying plaintiff's right to the possession thereof, denying that defendant wrongfully detained it and praying for its return with damages, it having been taken from him by the sheriff under the writ, plaintiff having given bond.

The jury returned a verdict finding that plaintiff was entitled to the possession of said automobile and that the same was in the possession of and detained by defendant Mitchell. From the judgment rendered on said verdict he has duly appealed.

The sole defense made was and is that the mortgage exacted usurious interest which, if true, rendered the chattel mortgage "invalid and illegal" under section 6496, Revised Statutes 1919.

The Eby-Cheek Motor & Realty Company was a local retail dealer in Excelsior Springs, selling Essex and Hudson automobiles which were manufactured and sold by the Hudson Motor Company of Detroit, Michigan. The Hudson-Brace Motor Company, located at Kansas City, is a corporation separate and distinct from the Hudson Motor Company, and was the distributing agent for said cars throughout the territory of which Excelsior Springs is a part. The plaintiff, Missouri Discount Corporation, was another Kansas City company, engaged in the business of helping to finance retailers and possibly others in the purchase of automobiles.

In November, 1922, the Eby-Cheek Motor & Realty Company desired to purchase for retail three automo-

biles, two Essex cars and one Cabriolet, but did not have sufficient cash to do so. The distributing agent, Hudson-Brace Motor Company, of Kansas City, arranged with the plaintiff, Missouri Discount Corporation, to assist the retail dealer in buying them.

The total amount necessary to buy the three cars was $3121.56, which was to be paid to the Hudson-Brace Motor Company. Of this amount, the Eby-Cheek Motor & Realty Company could and did raise $676.64, and the plaintiff, Missouri Discount Corporation, agreed to advance the balance, to-wit, $2444.92.

The three cars were shipped to Excelsior Springs, with bill of lading having attached thereto a draft for the $3121.56 drawn by the Hudson-Brace Motor Company on Eby-Cheek Motor & Realty Company, bill of lading and draft being sent to the Clay County State Bank of Excelsior Springs. The Hudson-Brace Motor Company wrote to the Eby-Cheek Motor & Realty Company that it should give to the bank a check for the $676.64 they were to furnish, and that the plaintiff (referred to in said letter as the "Finance Company") would send check for $2444.92 to cover the balance of the draft of $3121.56.

In this Hudson-Brace letter, the $676.64, to be furnished by the Eby-Cheek Motor & Realty Company, was stated to be made up of certain items, namely, fifteen per cent of the wholesale price of each car, certain fixed specific charges due the Hudson-Brace people and the "Finance Company's charges" which were stated to be $27.93 on one car, $30.38 on another, and $30.38 on the third (the car in suit), making a total for the "Finance Company's charges" of $88.69.

The plaintiff, Missouri Discount Corporation, wrote the Clay County State Bank, inclosing a draft for the $2444.92, the part they had agreed to furnish, together with an "Option to Purchase" on each automobile for the Eby-Cheek Motor & Realty Company to execute, after which the bank could apply the plaintiff's draft of $2444.92 and the Eby-Cheek Company's $676.64 to the

draft of $3121.56. These so-called "Options to Purchase" were in reality Chattel Mortgages, and one of them is the chattel mortgage on the car in question and referred to at the outset of this opinion as the basis of the plaintiff's claim of right to the possession of said car. These "options to purchase," or chattel mortgages, called for a total sum of $2533.61 placed against, or loaned upon, the three cars, which sum was divided up as follows: $867.77 against the car involved in this suit and in the chattel mortgage relied upon, $867.77 on the second car, and $798.07 on the third. The total sum secured by the three chattel mortgages, to-wit, $2533.61 amounted to $88.69 more than the amount of the plaintiff's draft of $2444.92.

The Eby-Cheek Motor & Realty Company paid their $676.64, which included the $88.69 "Finance Company's charges" (stated in the Hudson-Brace Motor Company's letter to the bank) and the bank had the Eby-Cheek Motor & Realty Company to execute the three "Option to Purchase" agreements, or chattel mortgages as we call them, and, with the money on the two checks, remitted to the Hudson-Brace Motor Company the proceeds of its draft for $3121.56. The three cars were placed in storage, or in the Eby-Cheek's warehouse, and the three chattel mortgages were duly recorded by plaintiff.

Thus, in paying the $676.64, Eby-Cheek Motor & Realty Company paid once for plaintiff's charges, that is, $30.38 on each of two cars and $27.93 on the third car, or $88.69 in all; and in plaintiff's "options to purchase" or chattel mortgages the same charges were also included in the amount secured thereby. When the Essex coach automobile not in controversy was sold by Eby-Cheek Motor & Realty Company in the course of their retail trade, the chattel mortgage was paid off by them and, in so doing, the $30.38 charges against that car were paid to plaintiff by said retail dealer, and they likewise paid to plaintiff the $2793 charges the Cabriolet when it was sold and the mortgage thereon paid off; and the charges of $30.38 are included in the $867.77 se-

cured by the chattel motgage on the car involved herein. However, plaintiff contends that the inclusion of its charges in the amount the Hudson-Brace people required Eby-Cheek Company to raise, to-wit, $676.64, was a *mistake* committed by the Hudson-Brace people, unknown to plaintiff; that the inclusion of said charges in said sum was not authorized by plaintiff, and that they did not receive, nor did they intend to receive, any benefit therefrom.

F. O. Trotter, who, at the time of and prior to the transaction in reference to the purchase of the three cars, was an employee and perhaps an officer in the plaintiff corporation and who is still connected with it in some capacity, was a witness for plaintiff. He testified that the total amount of plaintiff's charges for the three loans was $88.69 and that this "was for insurance and our charges." On cross-examination, after looking at plaintiff's records, he said that this amount of $88.69 was made up of $7.50 for insurance, $1.20 expense and $79.99 for "commission and profits" for the furnishing of the $2444.92 for ninety days, the length of time the "option to purchase" had to run. Although he finally admitted that from the Hudson-Brace letter, it "looked like" the plaintiff's charges were included in the $676.64 paid by Eby-Cheek Motor & Realty Company and were also included in plaintiff's mortgages, yet he insisted they were not included in the former with plaintiff's knowledge, and that plaintiff got no part of the money sent by the bank to the Hudson-Brace Motor Company.

He admitted that prior to the transaction in which the plaintiff undertook to finance Eby-Cheek Motor & Realty Company in the purchase of the three automobiles, he wrote a letter in behalf of plaintiff to Eby-Cheek Motor Company, enclosing a blank "financial statement" which he stated was sent at the request of the Hudson-Brace Motor Company, "who have made arrangements with us to finance you for Hudson and Essex Cars."

The letter further stated that:

"In case you care to take advantage of our plan, we will outline it as follows: You pay twenty per cent of the cost of the car to you at Kansas City, or factory, and freight, tax, advances, and our charge of one and one-half per cent for the first month and 1 per cent for each additional month. We insure car fully."

The foregoing evidence of Trotter was given in the forenoon on the day of trial. In the afternoon, Pugsley, plaintiff's Vice President and Manager, went on the stand and swore that the $30.38 on each of the two cars and the $27.93 on the other one, aggregating $88.69 for plaintiff's charges were included by Hudson-Brace Motor Company, in their letter to the bank, *by mistake;* that plaintiff got no part of the $3121.56 sent by the bank to the Hudson-Brace Motor Company and consequently no part of the $88.69 charged and included in the payment of $676.64 by Eby-Cheek Motor Company to the Bank for the Hudson-Brace Motor Company; that plaintiff had never received from the Hudson-Brace people any of those charges, and had never made any demand on them for those charges and that plaintiff "didn't know they had been paid until this noon;" that all of plaintiff's charges were included in the options and not otherwise. He further testified that it was not the custom for the Motor dealers in Kansas City to include the items of plaintiff's charges in their invoices; that this transaction was the only time plaintiff had ever financed the buying of any cars from the Hudson-Brace people by the Eby-Cheek Motor & Realty Company, or by any others on this plan.

He further testified that the interest (eight per cent on $867.77) for ninety days (the time the option had to run), was $17.34; that the insurance on the car was $5.50, leaving, of the $30.38 charged, only the sum of $7.54 for "investigation and expense;" and that an investigation was made of the Eby-Cheek Motor & Realty Company, this being the only transaction plaintiff had ever had with that company. It was further shown that the plaintiff's charges did not appear in the Hudson-Brace's *in-*

*voices,* but only in the *letter* they wrote Eby-Cheek Motor & Realty Company.

It was further shown that plaintiff is incorporated under article VIII, chapter 90, Revised Statutes 1919, and the third paragraph of section 10, 1922 thereof authorizes such "Loan and Investment Companies" to "charge for a loan made pursuant to this section one dollar for each fifty dollars or fraction thereof loaned for expenses, including any examination or investigation of the character and circumstances of the borrower . . . and the drawing . . . of necessary papers or other expenses incurred in making the loan."

The trial court overruled defendant's instruction in the nature of a demurrer to the evidence, and also defendant's requested peremptory instruction to the jury to find for defendant; and submitted the case to the jury upon the following instruction:

"The court instructs the jury that under the law in this State, plaintiff had the right to charge and receive from the Eby-Cheek Motor & Realty Company for the money advanced to them on the Essex motor car described in plaintiff's petition, eight per cent, per annum, as interest and in addition thereto, the sum of one dollar for each fifty dollars, or fraction thereof, loaned for expenses, including any examination or investigation of the character and circumstances of the borrower, and the drawing of necessary papers or other expenses incurred in making the loan;

"If you find from the evidence that the plaintiff collected or exacted a greater sum than that above mentioned for the money advanced by it to the Eby-Cheek Motor & Realty Company on the automobile in question, then you will find for the defendant, and if you do not so find, you will find for plaintiff."

It is contended by defendant that the transaction between plaintiff and the Eby-Cheek Motor & Realty Company is *conclusively* shown to be tainted with usury, and that consequently the trial court should have sustained

his demurrer and given his requested peremptory instruction to find for defendant.

There is no question but that the highest rate at which compensation for the use or loan of money can be legally asked or exacted is eight per cent per annum. [Section 6492, R. S. 1919.] And no one can, by or through any device or subterfuge, either directly or indirectly, exact, take or receive a greater rate for the use or loan of money, without being guilty of usurious practices; and if such is done, the mortgage securing said loan is tainted with usury and is thereby rendered void. [Section 6496, R. S. 1919.] Said statute is very comprehensive. ''It embraces not only the immediate transaction, in which the usury was exacted, but it includes collateral transactions as well.'' [Johnson v. Grayson, 230 Mo. 380, 395.]

''If the transaction is a loan and the sum charged or exacted for the use of the money loaned, exceeds the legal rate of interest, it is usury no matter what words it may be clothed in.'' [Coleman v. Cole, 158 Mo. 253, 260.] It is not necessary that the usurious interest be actually received. If it is *exacted*, that is all that is necessary to make it usurious. If a rate higher than the law allows is required and the agreement, contract or understanding is that it be paid, then that is the exaction of unlawful interest within the meaning of the statute. [Johnson v. Vette, 77 Mo. App. 563, 566-7.] Said statute, being intended to prevent usurious practices should be liberally construed ''so as to suppress the mischief and advance the remedy.'' [Central, etc., Trust Co. v. Smith, 247 S. W. 241; Keim v. Vette, 167 Mo. l. c. 401.] ''The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the subject-matter than is allowed by law. The form of the agreement is immaterial since any shift or device by which illegal interest is arranged to be received or paid is usurious. The true construction of statutes regulating interest upon the loan or forbearance of money, goods, or things in action, is that no greater

rate of compensation than that prescribed shall be taken upon a loan or forbearance of money, directly or indirectly, by way of a loan of property or in any other manner, no matter how disguised.'' [Kreibohm v. Yancey, 154 Mo. 67, 85.]

Now, so far as the inclusion of the plaintiff's charges *twice* is concerned, of course, if this was not a *mistake,* but was known to plaintiff or was a mere scheme by which to get twice $88.69 or $177.38, then this was far in excess of any amount permissible for interest and allowed for expenses under section 10,192, Revised Statutes 1919, and, in that event, the transaction was usurious. But, if it was merely included by the Hudson-Brace Motor Company by mistake, and there was no intention on the part of the plaintiff to obtain said amount twice, nor reception of any of such charges by plaintiff from the Hudson-Brace Motor Company, we do not see how plaintiff could be charged with usury, because of such mistake on the part of the Hudson-Brace Motor Company, and the mortgage held void. Certainly the question of whether the charges were thus included by mistake, was a question for the jury; and there being evidence that such was a mistake (indeed there is no express testimony that it was not a mistake), the finding of the jury should dispose of the question of usury so far as it depends upon the fact that it was charged twice against Eby-Cheek Motor & Realty Company. They seemed to have submitted, by mistake, to the double charge, for no one from that company claims they knew it was charged twice.

Defendant seems to entertain the idea that since the Hudson-Brace Motor Company induced the plaintiff to undertake the financing of the purchase of these three cars by Eby-Cheek Motor & Realty Company, that this made the plaintiff responsible for, and a party to, anything that the Hudson-Brace people did; but we do not think it follows that, because the Hudson-Brace people included plaintiff's charge by mistake in their letter to Eby-Cheek Motor Company, the plaintiff should be held

responsible therefor and charged with the intent to exact usury if plaintiff knew nothing of it, and did not seek to obtain or claim any benefit of such mistake. Consequently, plaintiff cannot be held to be conclusively guilty of exacting usury merely because its charges were included by mistake in both the payment to Hudson-Brace Motor Company and the plaintiff's mortgages.

But it is contended that even if only the aggregate amount of charges, to-wit, $88.69, be considered, still the exaction of this sum is shown by plaintiff's own testimony to give it more than the legal rate of interest.

Trotter's letter to Eby-Cheek Motor & Realty Company, prior to the transaction, does refer to "our charge of one and one-half per cent for the first month and one per cent for each additional month" and the charge of $30.38 on each of two of the cars and $27.93 on the third is exactly this rate, i. e., three and one-half per cent, on $867.77 on two of the cars and on $798.07 against the other one, for the three months or ninety days the loan was to run. This would be at the rate of twelve and one-half per cent a year and would therefore be usurious, if all of the respective charges represented only interest. But the letter clearly shows on its face that this includes other things, for it says that they, plaintiff, pay the insurance; and moreover, the statute allows plaintiff to charge for expenses in addition to the legal rate of interest, so that we would not presume that this proposed charge of "one and one-half per cent for the first month and one per cent for each additional month" was the plaintiff's charge *as interest,* but was merely a statement showing what would be the *extent of the cost* to Eby-Cheek Motor & Realty Company expressed in terms of rate per cent. The letter does not profess to go into details but to merely "outline" the plaintiff's plan. If the charges actually made did not exceed the legal rate of interest plus the expenses rightfully chargeable under section 10,192, we do not think plaintiff should be held guilty of usury merely because it "outlined" the cost

thereof in terms that might be interpreted as proposing to charge usurious rates of interest.

But Trotter testified that the $88.69 was divided into or made up of $7.50 for insurance, $1.20 for expense and $79.99 for "commission and profits." And since $79.99 is more than the interest on $2444.92 at eight per cent for ninety days amounts to, such charge, made *solely* for the use of said sum for that length of time, would be usurious. For, in each case, the $79.99 would be the amount *charged for the use of the money* and since it is greater than interest at the rate allowed by law for that use, it comes within the rule defining usury in the Coleman case, supra, because the "transaction is a loan and the sum charged or exacted for the use of the money loaned, exceeds the legal rate of interest" and is, therefore, "usury no matter what form of words it may be clothed in." Evidently, section 10,192 does not mean that a Loan and Investment Company can charge as much as one dollar for every fifty dollars or fraction thereof loaned, for expenses, *unless* the expenses actually incurred in good faith amount to that much. In other words, the amount charged by plaintiff in making its loan should not be any greater than the highest legal rate of interest plus the expenses incurred *in good faith,* including any examination or investigation of the character and circumstances of the borrower, and the drawing of necessary papers or other expenses incurred in making the loan. The statute surely does not mean that plaintiff is given the power to charge eight per cent interest and to make an additional charge for the loan under the guise of "expenses" *when no such expenses have been incurred.* That would enable plaintiff to exact more than the legal rate allowed for the money loaned by merely calling it "expenses," and would make of the statute a provision for the benefit and protection of those who would practice usury. Under the statute, the plaintiff as lender could charge, in addition to the highest legal rate of interest, only such sums for expenses as it had incurred *in good faith.* The lender will not be permitted

to cloak usurious intent or practices beneath pretended expenses or services. [39 Cyc. 981-2; Cain v. Stacy, 225 S. W. 18; Gate City Natl. Bank v. Strother, 196 S. W. 447, 448; Brown v. Robinson, 120 N. E. 694; Brown v. Robinson, 224 N. Y. 301; First National Bank v. Phares, 174 Pac. 519.]

But while plaintiff's evidence strongly tends to show that more was charged for the loan than the highest legal rate of interest plus the actual expenses incurred in good faith, yet there is evidence from which it appears that the excess charges above the highest rate of interest allowable may have been for expenses incurred in good faith; and since there is no presumption of an illegal or usurious intent but the burden rests upon the party seeking to impeach the transaction for usury to prove the illegal intent and that the transaction is a cover for usury, we cannot uphold defendant's contention that the judgment should be reversed and the cause remanded with directions to render judgment for him. Whether, in view of the fact that a portion of plaintiff's testimony showed that $79.99 was for the use of the money loaned, it was then incumbent upon plaintiff to explicitly show that enough of it was really for expenses incurred in good faith to reduce the amount charged *as interest* within the amount allowed by law, is a question we need not decide, in view of the disposition to be made of the case.

Defendant insists that there is nothing to show that Eby-Cheek Motor & Realty Company agreed to pay anything for expenses and therefore, no right to charge for expenses existed in plaintiff and hence the charge therefor was usury. W cannot accede to this. Eby-Cheek Motor & Realty Company knew it was dealing with a Loan and Investment Company and must be presumed to have known of its right to charge for expense incurred and to know that such would be charged. Besides, as heretofore stated, Trotter's letter would indicate to the Eby-Cheek Company that they would charge for expenses incurred.

It will be observed that, in the instruction upon which plaintiff's case was submitted, the jury were told that plaintiff had the right to charge at the rate of eight per cent on the money loaned and in addition thereto one dollar, for every fifty dollars loaned, for expenses; and that if plaintiff charged "a greater sum than that above mentioned" to find for defendant, and if the jury did not so find, they should find for plaintiff. The trouble about this instruction is that it tacitly assumes that the amount charged as expenses was for expenses really incurred and in good faith. In other words, the instruction tells the jury the plaintiff could charge eight per cent and also one dollar for every fifty dollars loaned as expenses regardless of whether such expenses were really and honstly incurred or not. For this reason, we do not think the jury had an opportunity to decide the precise question involved, namely, whether or not the charge above the legal rate was really for the use of the loan or was in good faith for expenses. It is not an instruction good as far as it went and placing upon defendant the duty of making a more specific explanation if he so desired, for it insufficiently submitted to them the question of whether there was usury exacted in the loan or not. Hence it was misdirection and not mere nondirection Defendant asked instruction C telling the jury that if plaintiff exacted *"as interest"* a sum greater than eight per cent per annum for the money advanced, the finding should be for defendant, but this was refused. However, as this instruction omitted to say anything about any sum allowed to be charged for expenses, it might perhaps be liable to be misunderstood by the jury, and therefore, if there were no other error in the case, the judgment might not be reversed solely because of the refusal of this instruction.

For the error hereinabove noted, the judgment is reversed and the cause remanded for a new trial. All concur.