CLYDE A. STEWART, APPELLANT, v. BOONE COUNTY TRUST CO., RESPONDENT.—87 S. W. (2d) 223.

St. Louis Court of Appeals. Opinion filed Nov. 5, 1935.

Motion for rehearing overruled Nov. 19, 1935.

*Cullen, Fauntleroy & Edwards* and *Rodgers & Buffington* for appellant.

*Clark, Boggs, Peterson & Becker* for respondent.

HOSTETTER, P. J.—This action was begun in the Circuit Court of Boone County on the 30th day of June, 1933, and the venue was subsequently changed to the Circuit Court of Monroe County where it was tried before the judge and a jury on April 16, 1934.

The action is one in replevin to recover a certain promissory note and two tax bills, described in the petition, which had been assigned to the defendant trust company, as collateral security on a loan.

The petition is in conventional form and the answer is a general denial.

The collateral was held by defendant trust company as security for a loan made to the plaintiff, and the issue involved is a charge that usurious interest was exacted by the bank on the loan and the recovery of the collateral is sought under the provisions of section 2844, Revised Statutes Missouri 1929 (Mo. Stat., Ann., sec. 2844, p. 4633).

The plaintiff for a number of years had been engaged in the contracting business and had paved or otherwise improved a number of streets in the City of Columbia, Missouri. In the latter part of 1927, he was awarded the contract to improve Stewart Road in said city, running through a residential district in a subdivision laid out by J. A. Stewart. The street had been previously paved. After plaintiff had secured the contract for improving Stewart Road, he solicited a loan from defendant, Boone County Trust Company for the necessary funds to make such improvement, with the understanding that he would assign the special tax bills against the abutting property issued for such improvement as collateral security for such loan. The Trust Company agreed to furnish the money, but required him to enter into a written contract in which it agreed to loan him the necessary funds up to $20,000 for the construction of such improvement. The loan was to be evidenced by promissory notes bearing eight per cent interest per annum. A written contract was prepared by the defendant and signed by both parties, covering the transaction between them. The pertinent portions of such contract, insofar as it affects the issues in this cause, are as follows:

"Sec. 6. Party of the first part agrees to allow the said second party five per cent for all money collected on said tax bills, and second party agrees to apply the balance as collected on said notes in payment thereof, and that if there be a balance over the amount of said notes after paying principal and interest, to pay same to the party of the first part.

"Sec. 9. Should any of said tax bills remain due and unpaid and it should become necessary to file suit or to incur other expenses in the collection of same, or in reducing the lien thereof to judgment, the party of the first part will pay all expenses so incurred. It is further understood that the party of the second part is in no way obligated for the collection of all or any one of said tax bills."

The evidence disclosed that on the completion of the work and the issuance of the special tax bills for same, the plaintiff assigned them, together with a promissory note of J. A. Stewart, which the defendant required as additional security, and delivered the tax bills and such note to the defendant; that when defendant became possessed of said tax bills, which was in October, 1927, it notified the various property

owners by postal card where the special tax bills were and that payment could be made to the defendant Boone County Trust Company at its banking house in said City; that the taxpayers or property owners, upon receipt of the notice appeared promptly, for the most part, and paid their respective tax bills; except that in some few cases the property owners delayed and, accordingly were required to pay some interest in addition to the face of the special tax bill, which constituted a lien against their respective properties.

It was also shown in evidence that the Trust Company failed in many instances to promptly credit the payments received on the tax bills on the plaintiff's notes, but carried a deposit account, on its books, of these collections and delayed crediting the payments in many instances as long as three weeks or more.

It was testified to by J. A. Stewart, the father of plaintiff, that he remonstrated with the officers of the Trust Company about this practice of delaying the credit entries on the notes, but did not obtain satisfaction.

The evidence further disclosed that the actual amount deducted from the payments made by the various property owners on the tax bills to cover the five per cent allowance, provided for by said section 6 of the written contract hereinbefore set out, was $800.55.

It further appeared that defendant notified plaintiff, shortly prior to the institution of this suit, that it intended to foreclose on the promissory note and the two tax bills involved in this suit and that it bid in the collateral in question and that it is still in the possession of defendant; that all the tax bills, with the exception of the two involved in this action, were collected between the first day of November, 1927, and the 9th day of January, 1931, and that the defendant bank did not charge any commission upon the collection made on the tax bills issued against the property of J. A. Stewart, the endorser of plaintiff's contract.

The money collected from the tax bills proved to be insufficient to cover plaintiff's notes and the interest thereon and J. A. Stewart, his father, advanced some $1800 to supply the deficiency.

It was also in evidence that the property in the tax district was valuable residential property and the owners thereof financially responsible.

J. A. Stewart's testimony, which was confirmed by the bank books, further showed that the collections made by the Trust Company on these tax bills from October 31, 1927, for the remaining two months of that year, amounted to $9067.50 and for the whole of 1928, the collections on the tax bills amounted to $6248.93, the most of which was paid in during the first three or four months of that year; that the collections for 1929 amounted to $3293.97 and that the collections

were very small in 1930, the last collection being made on October 10, 1930, and that the total collections on the tax bills were $19,160.49.

The testimony further showed that all of the tax bills were collected by the Trust Company except the two involved in this suit and that only a few of them delayed payment beyond the time they should have paid, but when they did pay, they, of course, paid interest which had accrued on their original tax bills.

The two tax bills which are involved in this suit were against the City of Columbia, both dated October 5, 1927, both bearing interest at the rate of eight per cent from November 5, 1927, one being for $1361.25 and the other being for $1387.55. The other item involved in this suit was a note for $2,000 given by plaintiff and wife to J. A. Stewart, secured by deed of trust on real estate, which had been assigned to the Trust Company as further security for plaintiff's loan.

Plaintiff testified that the contract between him and the Trust Company was drawn up by the company and was brought to him and that he signed the contract in the presence of Mr. Hunt, the vice-president and manager of the Trust Company. Mr. Hunt was the officer of the bank who sold the collateral in controversy at public sale and bought it in for the bank. At the time he made the sale a notice was served on him signed by plaintiff.

Plaintiff was asked on his examination about a conversation which he had had with Mr. Hunt in respect to the five per cent charge and, apparently, because of the fact that Mr. Hunt was dead at that time, the court sustained an objection, and, thereupon, counsel for plaintiff stated as follows:

"We offer to prove by this witness that Sam Hunt stated to him that he couldn't afford to loan money at eight per cent (8%) on a deal like this, and would have to charge an extra five per cent (5%) for the use of the money, and for that reason he wanted that clause put in the contract."

And, by the court: "Proffer denied."

All the testimony was offered by the plaintiff. It was the contention of plaintiff in the lower court, and is still his contention, in this court, that the five per cent allowance for collection of the tax bills was a mere pretext to charge and collect a greater rate of interest than the statute provides and that such was the intent and purpose of the defendant; and that under all the evidence in the case the plaintiff was entitled to such finding or, that, at least, it was a question for the jury. The court gave defendant's instruction in the nature of a demurrer to the evidence at the close of plaintiff's testimony and required the jury to return a verdict for the defendant. The judgment based thereon followed, and, after an unavailing motion for a new trial, the plaintiff brings the cause to this court by appeal for review.

The plaintiff insists that, under his interpretation of the contract,

the Trust Company did not obligate itself to collect the tax bills, and, therefore, the clause providing for the Trust Company to receive an additional five per cent over and above the legal eight per cent rate of interest per annum, was clearly for interest, which, of course, would be usurious, and that this court should reverse the cause with directions to the trial court to enter judgment for the plaintiff, or, if that holding be not made, the cause should be reversed and remanded because the jury was not allowed to pass upon the issues of fact involved.

After a careful reading of the record, and an examination of the excellent briefs furnished by opposing counsel, we have reached the conclusion that the trial court erred in giving a peremptory instruction in favor of defendant and in failing to submit the issues to the jury under proper instructions.

The plaintiff insists that the contract should be construed most strongly against the defendant Trust Company because it prepared the contract, which insistence, of course, is in line with the general holdings of the courts. However, defendant insists that as to a contract which contains an ambiguity, the construction placed upon it by the parties before any question arose is good evidence as to their intent and meaning given to the words used.

Inasmuch as the plaintiff assigned the tax bills to the defendant for the specific purpose of securing the payment of his notes to cover the loan made to him by defendant, and that he, himself, did not essay to collect the tax bills and allowed defendant to collect them, and the defendant did, in fact, collect the tax bills and that, as defendant performed some services in the collection of the tax bills, we would not be warranted in holding, as a matter of law, that the clause providing five per cent of the money collected by the Trust Company for its services and trouble in making the collections, was for excess interest over the statutory rate, and, therefore, usurious, but we have reached the conclusion that this question involves one of fact which should have been submitted to the jury.

We find, according to the weight of the authorities, that where a contract for a loan, which requires, in terms, or, from necessary implication, the rendition of services by the lender for the benefit of the borrower, a fair and reasonable charge for the services over and above the highest legal rate of interest on the money loaned, does not render the constract usurious. However, we also find, according to the weight of the authorities, that, no matter in what form the contract appears, no matter how fair it may appear upon its face, courts are not bound to take the contract as if it were what it appears to be, but may inquire into the facts and circumstances in order to determine whether or not it is in good faith for real, substantial services and that the amount of the compensation set out for the rendition of such services is reasonable and not excessive. In

other words, the nature of the services, whether they are substantial, necessary and valuable, and whether the amount attempted to be exacted for the rendition of the services is reasonable, are determinative factors in construing whether the contract be for the rendition of services alone or merely a cloak whereby excess interest over the legal rate may be collected by the lender.

As said by the court in Guenther v. Amsden, 44 N. Y. S. 982: "Direct evidence as to the usurious agreement is not absolutely necessary. It may be proved by facts and circumstances, and then it is a question for the jury."

In re Mesibovsky, 119 C. C. A. 42, 200 Fed. 562, a typical case cited and relied upon by defendant, the facts were that a lender (a private banker) had loaned from time to time money, at the highest legal rate of interest, to the borrower (who subsequently became a bankrupt) and took from him assignment of various accounts due from the borrower's customers. The lender, in addition to interest, contracted for two per cent on customer's accounts for collecting them. The testimony showed that the lender investigated the business ratings of said customers, sent them notices of assignment and invoices, assumed the entire burden of making the collections, which service required the employment of clerks, the keeping of books and a general supervision of the borrower's business so far as the assigned accounts were concerned; in detail the services required the "sending of letter after letter, asking for payment in more and more imperative language, sight drafts against the amounts of unpaid invoices, the selection of a lawyer and the turning over of each unpaid claim to him with instructions to collect." The referee and the U. S. District Judge for the Southern District of New York held that the agreement for the two per cent charge for services was "merely a cloak for usury," but the Circuit Court of Appeals, where the case was reviewed on appeal, held otherwise. That court necessarily held that such services were substantial and not services which were usually rendered gratuitously by a lender and that the two per cent charge was not an unreasonable or excessive charge, and, therefore, its inclusion in the contract did not render it usurious.

The fact that the referee and the U. S. District Judge had taken a contrary view to that of the Circuit Court of Appeals, showed that reasonable minds might, and did, in this instance, differ on these questions of fact. A fortiori, where, as in the instant case, the charge for services is five per cent and the services less onerous and less substantial than in the Mesibovsky case, supra, it becomes a greater reason for the submission of these questions of fact to a jury rather than to declare as a matter of law that the charges were reasonable and the services were substantial, and, therefore, the contract had no usurious taint. Suppose the charge for services as set out in the con-

tract in the instant case had been ten or fifteen per cent instead of five per cent, so that there could have been no dissent on the question of its unreasonableness, the trial court would, in that event, have been driven to hold, as a matter of law, that it was unreasonable, or, to have taken the judgment of the jury thereon.

In the instant case there were not over fifty property owners who owed special tax bills although several of them owned more than one tract of land on which the liens existed. The defendant wrote and mailed postal cards to each of these property owners advising that the tax could be paid at its banking house. Some appeared and got information, but delayed payment and came more than once before paying. Defendant kept the accounts, figured interest on past due bills, entered credits on plaintiff's notes, and kept the book accounts accurately, and, no doubt, had some conferences with recalcitrant debtors, but beyond the first notification it does not appear that it followed up with letters or made any outside efforts to speed the collections, but was always ready to receive payments when the property owner came in and was ready to pay.

We are clearly of the opinion that reasonableness of the charge and whether the services were substantial or insignificant and unsubstantial are questions of fact and determinative factors in reaching a conclusion as to the nature of the five per cent clause in the contract, and, therefore, the issues should have been submitted to the jury.

The following authorities, we believe, furnish support for the conclusion we have reached in the disposition of the instant case, and may prove illuminating to those desiring to further explore the interesting questions involved. [Cockle et al. v. Flack, 98 U. S. 344; Garland v. Union Trust Co., 154 Pac. 676, 1. c. 679, and cases there cited; Southwestern Investment Co. v. Green (Tex. Civ. App.), 19 S. W. (2d) 102, 1. c. 103; Douglas v. Boulevard Co. (Sup. Ct. Conn.), 100 Atl. 1067, 1. c. 1068; 27 R. C. L., p. 231, sec. 32, and p. 234, sec. 34; Securities Investment Co. v. Rottweiler (Mo. App.), 7 S. W. (2d) 484; Bank of Lumpkin v. Farmers State Bank (Sup. Ct. Ga.), 132 S. E. 221, 1. c. 227; Strickland v. First State Bank of Ballaton (Sup. Ct. Minn.), 202 N. W. 727; English Lumber Co. v. Wachovia Bank & Trust Co., 179 N. Carolina 211, 102 S. E. 205; Mayfield v. British & A. Mortgage Co., 104 S. Carolina 402, 88 S. E. 370; Fidelity Loan Guarantee Co. v. Baker, 54 Mo. App. 79, 1. c. 83, et seq.; Tourse v. Mound City Trust Co. (Mo. App.), 52 S. W. (2d) 611, 1. c. 613; Missouri Discount Corporation v. Mitchell, 216 Mo. App. 100, 1. c. 109, 261 S. W. 743; Leavel v. Johnson, 209 Mo. App. 197, 1. c. 206, 232 S. W. 1064; Williams v. American Exchange Bank (Mo. App.), 280 S. W. 720, 1. c. 723; In re Fishel, Nessler & Co., 192 Fed. 412; Robinson v. Whittier (Wash.), 191 Pac. 763; Kreibohm v. Yancey, 154 Mo.

128

67, 1. c. 85, 55 S. W. 260; Bell v. Mulholland, 90 Mo. App. 612; Guenther v. Amsden, 44 N. Y. S. 982; Coleman v. Cole, 158 Mo. 253, 59 S. W. 106.]

It follows that the judgment of the lower court should be reversed and the cause remanded, and it is so ordered. *Becker* and *McCullen, JJ.,* concur.