**N. R. GARRETT, Maggie A. Garrett, Florence G. Meininger, Charles Garrett, Steve Garrett and Kay Garrett, Plaintiffs-Appellants,**

v.

**CITIZENS SAVINGS ASSOCIATION, Defendant-Respondent.**

No. 32170.

Missouri Court of Appeals,
Western District.

May 11, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1982.

George A. Spencer, Columbia, for plaintiffs-appellants.

Jerome W. Seigfreid, Louis J. Leonatti, Mexico, for defendant-respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Plaintiffs-appellants N. R. Garrett, et al. (plaintiffs)[1] appeal the judgment of the trial court awarding them $953.21 in their action to recover usurious interest paid on their loan of $200,000.00 from defendant-respondent Citizens Savings Association (defendant). It is undisputed that usurious interest was exacted by defendant on the loan in question. The questions on this appeal concern the trial court's determination as to (1) what payments made to defendant were usury (2) what amount of that usury is recoverable by plaintiffs and (3) what additional amounts may be recovered as interest on the award. Plaintiffs also contend that the award of $500.00 for attorney's fees was inadequate.

On September 25, 1969, N. R. Garrett, his wife Maggie, N. R. Garrett, Jr. and his wife Florence (plaintiffs-borrowers) borrowed $200,000.00 from defendant with interest at 8% and payable in 144 monthly payments of $2,165.00. Payments were to begin January 1, 1970 and end October 1, 1981. This loan was evidenced by a deed of trust on N. R. Garrett's farm containing approximately 176 acres, three structures and having an appraised value, less encumbrances, in excess of the $200,000.00 loan. On October 2, 1969, defendant issued two drafts to the borrowers, one in the amount of $175,000.00 and the other in the amount of $25,000.00. The $175,000.00 was deposited by N. R. Garrett in his personal checking account. The $25,000.00 was endorsed by the borrowers and then kept by defendant in a non-interest earning escrow account as a "compensating balance." The loan agreement provided that "[t]his $25,000.00 shall be held by this association and cannot be withdrawn until the outstanding principal balance of the loan has been reduced to $25,000.00." At this same time, N. R. Garrett gave defendant a check for $4,969.25 for miscellaneous closing expenses, which included a $1,750.00 "Initial service charge" and a $2,000.00 charge denoted "PREMIUM ON LOAN 1%."

In their petition, plaintiffs alleged and prayed that they were entitled to: (1) $9,532.07 for the excessive interest which they paid on the $25,000.00 compensating balance, which they claimed was not actually borrowed nor received by them; (2) the $1,750.00 initial service charge and $2,000.00 premium paid to defendant, which they contended was merely a device used to obtain additional usury; and (3) prejudgment interest in the amount of "the highest legal interest from November 2, 1976, the date of demand by the served petition."[2]

At trial, plaintiffs offered evidence as set out below to support their allegations. Defendant offered no testimony, but cross-examined plaintiffs' witnesses concerning how the proceeds of the loan were distributed and what persons or entities made the payments on the loan. At the time of the loan, N. R. Garrett and N. R. Garrett, Jr. were the sole officers and directors of two Missouri "Subchapter S" corporations, City Quarries, Inc. and Missouri Concrete Company, and each owned 50% of the stock in those corporations. On the loan application, N. R. Garrett, Jr. stated that the proceeds of the loan were to be used for "operating money for businesses," and the testimony

---

1. Plaintiff Maggie Garrett is now deceased. N. R. Garrett, Jr., also deceased, is represented by his sons Charles and Steve and his daughter Kay. Florence Meininger is the former Florence H. Garrett, former wife of N. R. Garrett, Jr.

2. Plaintiffs were granted their motion for leave to amend their petition by interlineation to add the prayer for prejudgment interest.

indicated that $126,452.30 of those proceeds were advanced to either City Quarries or Missouri Concrete for working capital. The remainder of the proceeds were used to pay off personal debts of N. R. Garrett and his son and for other personal expenses.

Only five of the payments on the loan were made personally by N. R. Garrett, forty-nine were made by either of the two corporations wholly owned by N. R. Garrett and his son, and the source of two payments were said to be "unknown". The total interest paid on the loan was $65,920.42, of which $57,045.54 was paid by the corporations, $6,502.54 by N. R. Garrett and $2,372.34 by the source "unknown". The payments made by the corporations were charged to N. R. Garrett on the corporations' books in order to reduce the corporations' indebtedness to him (money he advanced to the corporations from the proceeds of the loan). All of the interest deductions were taken and reported by the corporations on their income tax returns.

By letter of July 10, 1974, defendant informed N. R. Garrett that the $25,000.00 being held in escrow could be credited against the outstanding balance of his loan. At that time the balance of the loan was $142,559.93. The following day, N. R. Garrett informed defendant to go ahead with the credit, which the association did on July 12, 1974. The loan was paid in full on February 23, 1976. Plaintiffs filed their petition on November 2, 1976.

After bench trial and after request for findings of fact and conclusions of law, the court found:

1. Plaintiffs had made a loan application for $200,000.00, the proceeds to be used for business purposes.

2. A $200,000.00 note with interest at 8% was executed along with a deed of trust by plaintiffs. Pursuant to a settlement statement, plaintiffs paid directly to defendant $4,969.25, which included $3,750.00 comprised of an initial service charge and a premium of 1%.

3. $25,000.00 of the loan was not available to plaintiffs but was kept in a non-inter-est bearing account (compensating balance) with the defendant Citizens Savings Association with the result that the effective rate of interest charged on the loan went from 8 to 9.15% and that $9,532.07 interest resulted from the compensating balance between the first payment on January 19, 1970 and July 12, 1974 the date the defendant credited the loan balance with the $25,000.00.

4. That the lawful rate of interest on this loan pursuant to 408.050, RSMo was 8%.

5. Of the 56 payments made during the period of the compensating balance 40 were made by corporations under plaintiffs' control. Plaintiffs made 5 payments and the source of 2 payments was unknown.

6. Plaintiffs advanced $126,452.30 of the $175,000.00 loan to the two corporations in question and the funds were used by those corporations for business purposes.

7. On July 10, 1974 defendant notified plaintiffs that plaintiffs could receive $25,-000.00 or have this amount (compensating balance) applied to the loan.

The trial court concluded that until the crediting of the compensating balance, excess interest of $9,532.07 was paid, but that only 10% of that amount or $953.21 was paid by plaintiffs. The court stated that the portion of the usury paid by the corporations (90%) would not be recoverable by the individual plaintiffs. Plaintiffs were awarded the $953.21 and $500.00 attorney's fees.

There is no question that the $25,000.00 compensating balance kept by defendant until July 12, 1974 made the loan usurious. The giving back by defendant only stopped the continuation of usury from July 12th and did nothing to correct the usurious interest collection from the date of the first payment until July 12, 1974. This amount retained by defendant increased the interest rate on the amount actually loaned to the borrowers from the agreed upon 8% to 9.15%. At the time of the loan, § 408.030, RSMo 1969 was in effect, which stated:

The parties may agree, in writing, for the payment of interest, not exceeding eight

percent per annum, on money due or to become due upon any contract.

Section 408.050, RSMo 1969 further provided:

> No person shall directly or indirectly take, for the use or loan of money . . . above the rates of interest specified in sections 408.020 to 408.040 for the forbearance or use of one hundred dollars, or the value thereof, for one year. . . . Any person who shall violate the first going prohibition of this section shall be subject to be sued, for any and all sums of money paid in excess of the principal and legal rate of interest of any loan, by the borrower . . . and shall be adjudged to pay the costs of suit, including a reasonable attorney's fees to be determined by the court.

Thus, the trial court was correct in finding that the $9,532.07 exacted as interest on the escrowed money was usurious. *See Grundel v. Bank of Craig*, 515 S.W.2d 177 (Mo. App.1974); *see generally* 92 A.L.R.3d 769, 775. The trial court's conclusions of law made no mention, however, of the $1,750.00 service charge or $2,000.00 premium paid by plaintiffs, although plaintiffs pleaded, prayed and presented evidence on these charges as well. Nor, did the trial court make any finding or conclusion as to the prejudgment interest requested in the petition. Our review in a court tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

## I.

Plaintiffs first contend that the trial court erred in finding that plaintiffs were entitled to recover only 10% of the $9,532.07 denominated as usurious interest resulting from the $25,000.00 compensating balance.

◼ The trial court cited to § 408.050 for its conclusion that plaintiffs were only entitled to the 10% of the usurious interest *they had paid.* That section says that "any person who shall violate [§ 408.030] . . . *shall be subject to be sued,* for any and all sums of money paid in excess of the principal and legal rate of interest, *by the borrower.*" (Emphasis added.) The trial court read

that section to limit recovery of usurious interest to those amounts actually paid by the borrower. This conclusion was reached even though the interest not paid by the individual borrowers was paid by their wholly-owned corporations, which in turn charged these payments to N. R. Garrett.

The trial court erroneously declared and applied § 408.050. The phrase "by the borrower" does not refer to "money paid," rather, it completes the phrase "shall be subject to be sued." The phrase referring to "for any and all sums of money paid" is merely the object for which "any person" may be sued. If this court were to accept the trial court's interpretation of this statute, any portion of usurious interest not paid by the borrower would never be recoverable. The net effect would be to relieve a lender, who made a usurious loan, of any recovery against him for the excess interest he charged if he could show the loan payments were written on checks other than the individual borrowers'. Thus, if a hypothetical borrower was unable to make payments on a usurious loan, but had a gratuitous benefactor who made that payment for him, (*e.g.* parent, sibling, friend, trust, foundation or business entity) the usurious interest paid could not be recovered, even though the borrower's obligation to the lender had been fully satisfied.

◼ "Statutes which are intended to prevent usurious practices are remedial in nature and should 'be liberally construed so as to suppress the mischief and advance the remedy. . . .' *Tobin v. Newman*, 271 S.W. 842, 843 (Mo.App.1925); *Missouri Discount Corp. v. Mitchell*, 216 Mo.App. 100, 108, 261 S.W. 743, 746 (1924)." *State ex rel. Crist v. Nationwide Finance Corp.*, 588 S.W.2d 8, 11 (Mo.App.1979). Although § 408.050 limits those who may *maintain a cause of action* for usury to the borrower and certain of his personal and legal representatives (*e.g.* administrator, trustee in bankruptcy), there are no indications from the statute or case law that this section limits *recovery of the usury* based upon who pays off the loan debt. Because this court is constrained to liberally construe § 408.050 to deter the

practice of usury, the trial court's decision that this section limits plaintiff's recovery to those amounts of usurious interest they personally paid cannot stand. The trial court's ruling would leave 90% of the usurious interest paid in the hands of defendant, never to be recovered, and would also reward defendant for its unlawful actions. Error was committed in declaring and applying the law (408.050, RSMo 1969) by limiting plaintiffs recovery to only 10% of the usurious interest. Plaintiffs should have judgment for $9,532.07, the full amount of interest exacted during the period the $25,000.00 compensating balance was held by defendant.

■ Defendant asserts that the money was borrowed by plaintiffs "for commercial purposes," that plaintiffs used the loan proceeds in their corporations, and because of § 408.060, RSMo 1969 and § 408.035, RSMo 1978 this court should "pierce the corporate veil" and "not tolerate an individual trying to obtain a lower interest rate by fabricating an individual loan when in fact the loan is being made for a corporate, commercial enterprise." This contention of defendant is totally without merit.

Section 408.035, RSMo 1978, (effective January 9, 1975) which makes lawful "any rate of interest" on "a business loan of $5,000 or more," was not in effect at the time of the loan here and has no bearing upon this case. Section 408.060, RSMo 1969, which prevents a corporation from advancing usury as a defense in a cause of action, also does not apply here, as there is no "veil" to pierce. The only corporate involvement in the loans here was the corporations' payments on the usurious loan. These payments were made in order to expunge the corporations' debt to N. R. Garrett, and thus, in effect, were made with N. R. Garrett's money. Defendant was fully aware of the purpose of the loan in question, but chose to make the loan to the individual borrowers. Defendant is bound by its own loan contract. It made the loan to individuals, not a corporation, and cannot avoid the usurious nature of the loan contract by trying to change that contract on appeal.

## II.

Plaintiffs also contend the trial court's award was erroneous because it did not address nor decide the nature of the items denominated as "$1,750.00 (initial service charge)" and "$2,000.00 (1% premium charge)." No evidence was presented as to whether services were performed by defendant to warrant these initial charges. Plaintiffs' petition alleged these two charges were part of the excess interest paid by plaintiffs. The court overruled defendant's motion for directed verdict which requested that these charges not be determined usurious, acknowledged them in its findings, but did not make any mention of those charges in its conclusions or award. There was no finding on whether the charges were for services rendered, and if so, whether the charges were reasonable. In *Lucas v. Beco Homes, Inc.*, 494 S.W.2d 417, 422 (Mo.App.1973), the court stated as follows:

> In determining whether a transaction is usurious "The law will not tolerate any camouflage disguising a usurious transaction to make it seem innocent. 'The law looks at the nature and substance of the transaction, and not to the color or form which the parties in their ingenuity have given it ... The courts will follow them through ... and ascertain the true character and design of the transaction ...'" *Webster v. Sterling Finance Co.*, 355 Mo. 193, 195 S.W.2d 509, 514–515.

Moreover, in *Stewart v. Boone County Trust Co.*, 230 Mo.App. 120, 87 S.W.2d 223, 226 (1935), the court stated:

> In other words, the nature of the services, whether they are *substantial, necessary* and *valuable, and* whether the amount attempted to be exacted for the rendition of the services is *reasonable*, are determinative factors in construing whether the contract be for the rendition of services alone or merely a cloak whereby excess interest over the legal rate may be collected by the lender. (Emphasis added).

The court went on to say the courts are not bound to take the contract on its face only,

"but may inquire into the facts and circumstances in order to determine whether or not it is in good faith for real substantial services, . . . ." *Id.* 87 S.W.2d at 226. The question then is whether the defendant rendered "substantial, necessary and valuable" services for the service and premium charges assigned to plaintiffs, and if so, whether those charges were "reasonable" or were merely a "cloak" for excess interest.[3]

■ In *Dickey v. Bank of Clarkdale*, 183 Miss. 748, 184 So. 314, 316 (1938), the court stated:

> Whatever may be its euphony, a service charge is something which the bank requires the borrower to pay in order to have the loan or accommodation, and, therefore, it is interest under another name; and when more than 8% per annum is thereby taken or stipulated, it is usurious.

*See also Lewis v. Pacific States Savings and Loan Co.*, 1 Cal.2d 691, 37 P.2d 439, 440 (1934) (so-called amortization service charge considered interest); *Vee Bee Service Co. v. Household Finance Corp.*, Sup., 51 N.Y.S.2d 590, 608–609, applying New Jersey law, affirmed 269 App.Div. 772, 55 N.Y.S.2d 570 (1944) (surety premium charge deemed interest). The plaintiffs alleged in their petition that the defendant charged the plaintiffs an "initial service charge" of $1,750 and a "1% premium charge" of $2,000. Although the burden of proving usury is generally on the person asserting it (*Lucas v. Beco Homes, Inc., supra*), because the nature of the charges here in question are such that knowledge of whatever services that could have been performed for those charges are matters peculiarly within the knowledge of the defendant, the burden of going forward with the evidence shifts to the defendant-lender when any evidence is brought forward to show that no services were performed for the charges made.

■ Plaintiff N. R. Garrett alleged and testified that plaintiffs received nothing in return for these charges. Defendant did not dispute that it assessed and collected those charges, which were clearly made as a condition of granting the loan. No attempt was made by defendant to show that any services were rendered, and if so, if they were substantial, necessary and valuable, and the amount reasonable. Finally, the trial court denied defendant's directed verdict on this issue, which indicated that it believed plaintiffs' made a submissible case. The only conclusion this court can draw is that they were disguised interest charges, as plaintiffs alleged, and the total of $3,750.00 should have been included as additional damages.

### III.

■ Plaintiffs' next point contends that the trial court erred in failing to enter a judgment for twice the amount of usurious interest exacted on the $25,000.00 compensating balance. Plaintiffs claim that § 408.030.2, RSMo 1978 (effective January 9, 1975), which provides a double penalty for usury, should apply retrospectively to the loan made here in 1969. Although Article I § 13 of the Constitution of Missouri 1945 prohibits laws retrospective in operation, "[t]his provision . . . does not apply to a statute dealing only with procedure or remedies." *Scheidegger v. Greene*, 451 S.W.2d 135, 137 (Mo.1970). *See also State ex rel St. Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974). Plaintiffs argue that § 408.030 is such a procedural or remedial statute, and should apply retrospectively to allow an award of twice the usury which it paid.

Section 408.030.1 provides that "[a]fter January 9, 1975" the legal rate of interest on written agreements shall not exceed 10%. Subsection 2, provides that if the interest rate exceeds the lawful rate, the borrower "may recover twice the amount of the interest thus paid." Essentially, plaintiffs wish to have the 8% interest rate for usury of the 1969 statute apply, but use the 1975 statute's remedy. In *Buder, supra*, the court held that there are two exceptions to the constitutional prohibition against retrospective application of a new law: "(1)

---

**3.** These services must be considered separate and apart from the exacting of a commission for the mere making of the loan. *Hansen v.*

*DuVall*, 333 Mo. 59, 62 S.W.2d 732 (1933); *Cuendet v. Love, Bryan & Co.*, 57 S.W.2d 701 (Mo.App.1933).

where a legislature manifests a clear intent that it do so, and (2) where the statute is procedural only and does not affect any substantive right of the parties." 515 S.W.2d at 410. The use of the words "*After January 9, 1975*" in § 408.030 makes it clear the legislature did not intend the statute to be retrospective. The question remains as to whether the statute is "procedural" or if it affects a "substantive right" of defendant. The Missouri cases which have allowed for retroactive application of a "procedural" law have seldom involved the issue of damages or increases in a penalty, but generally involve extensions of time limitations. *See, e.g., Scheidegger v. Greene, supra; Darrah v. Foster*, 355 S.W.2d 24 (Mo.1962); *Wentz v. Price Candy Co.*, 352 Mo. 1, 175 S.W.2d 852 (Mo.1943). These decisions are inapposite to the instant case. A case from Illinois, however, is on point. In *Barrett v. Guaranty Bank and Trust Co.*, 123 Ill.App.2d 326, 260 N.E.2d 94 (1970), the question involved the retrospective application of·a usury penalty statute quite similar to Missouri's, which like § 408.030, had been amended to allow a penalty of double the usurious interest. As in the instant case, the plaintiff there argued that the amendment was procedural and should be applied to a loan procured before the amendment. The court disagreed, stating that "[s]ince the law does not favor penalties, a statute will not be so applied as to increase the penalty after the conduct to be penalized has already occurred." *Id.* 260 N.E.2d at 99. The Illinois court believed that its earlier decision in *Theodosis v. Keeshin Motor Express*, 341 Ill.App. 8, 92 N.E.2d 794 (1950), which held that a statute abolishing the damages limitation on wrongful death actions should not

be held retrospective, required its decision on the usury statute.

As in Illinois, the Missouri statute abolishing the $50,000.00 limitation on wrongful death actions has been ruled prospective only in *State ex rel. St. Louis—San Francisco Ry. Co. v. Buder, supra.* Moreover, *Buder* cited approvingly to the Illinois decision in *Theodosis v. Kershin Motor Express, supra.* The logic in *Barrett, Theodosis* and *Buder* controls, and § 408.030 should not be applied retrospectively.[4]

■ Alternatively, plaintiffs argue that § 408.030, RSMo 1978 should apply because it was in force when their cause of action accrued, as it did not accrue until February 24, 1976, the date their final payment was made on the loan. In Missouri, although the usurious character of a transaction is determined as of the date of its inception (*Foskin v. Laessig*, 32 S.W.2d 768, 770[2, 3] (Mo.App.1930) ) the cause of action does not accrue until the loan is paid. *Rukavina v. Accounts Supervision Corp.*, 241 Mo.App. 15, 237 S.W.2d 503 (1951); *Lawler v. Vette*, 166 Mo.App. 342, 149 S.W. 43, 44–45 (1912); *Major v. Putney*, 293 S.W. 81, 82 (Mo.App. 1927). Thus, plaintiffs' contend that subsection 1 of § 408.030, increasing the interest ceiling to 10%, should not apply to their loan, whereas subsection 2, authorizing a double penalty for violation, should apply.

■ Plaintiffs do not provide authority to support this contention. It is the duty of this court to discern the legislative intent in construing the meaning of these usury statutes. *Julian v. Burrus*, 600 S.W.2d 133, 139 (Mo.App.1980). Section 408.030, RSMo 1978 indicates that the legislature clearly intended to apply each of the provisions of that statute uniformly and to allow the double

---

**4.** In *Julian v. Burrus*, 600 S.W.2d 133, 139–142 (Mo.App.1980), this court held that the provisions of § 408.050, RSMo 1969, providing for recovery of all usurious interest exacted "basically and primarily involved the imposition of penalties and forfeitures" (*id.* at 142) and was not "strictly remedial" as the appellant had contended (*id.* at 140). In *Burrus*, the question concerned whether or not § 408.050 provided for a "penalty or forfeiture" in order to determine which of two statutes of limitations applied. Although the underlying issue is not the same here, the reasoning in *Burrus* is equally

applicable to the double penalty language in § 408.030.2, and that section cannot be considered "strictly remedial" as plaintiffs here contend, (*id.* at 141). In any event, *Buder's* rationale seems most applicable here: "It is best to keep in mind that the underlying repugnance to the retrospective application of laws is that an act or transactions, to which certain legal effects were ascribed at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects which alter the rights and liabilities of the parties thereto." 515 S.W.2d at 411.

damages provision to apply only to loans procurred "[a]fter January 9, 1975" when the 10% maximum on interest applied. The trial court was correct in not allowing double damages under § 408.030.2, RSMo 1978.

## IV.

■ Plaintiffs' next point alleges that the trial court erred in failing to allow "the highest legal interest from November 2, 1976, the date of demand by the served petition," as pleaded by plaintiffs in their petition and authorized by § 408.020, RSMo 1969. Section 408.020 had been applied to mandate an award of prejudgment interest of 6% per annum where a demand was made in the petition and the amount due under the contract is readily ascertainable, if not strictly liquidated. *Slay Warehousing Co. Inc. v. Reliance Insurance Company,* 489 F.2d 214, 215 (8th Cir. 1974); *Laughlin v. Boatmen's National Bank,* 354 Mo. 467, 189 S.W.2d 974, 979–980 (1945). This award is compelled by law even though the obligor may question his liability for any or all portions of the claim. *Denton Construction Co. v. Missouri State Highway Commission,* 454 S.W.2d 44, 59–60 (Mo.1970); *Ehrle v. Bank Bldg. & Equipment Corp. of America,* 530 S.W.2d 482, 497 (Mo.App.1975). Prejudgment interest has been awarded for the work and labor of a general contractor (*Denton Construction Co., supra*), even though those claims may be "unliquidated in the sense that the amount is to be measured and determined by the standard of the reasonable value of the services ..." 189 S.W.2d at 979.

The trial court granted plaintiffs leave to amend to add to their petition a request for prejudgment interest.

Although the judgment is silent on this point it should here be addressed. Plaintiffs rely on 408.020 RSMo, 1969, which authorizes creditors to receive 6% interest when no other rate is agreed upon on amounts due and demanded. Plaintiffs say that 8% was agreed upon and that figure should apply to the amount held as damages. Suffice it to say that the 8% figure used in the note could not be held to be the amount "agreed upon" for interest here, as there was no agreement forged on this mat-

ter. Defendant answers this contention by saying that plaintiffs did not request prejudgment interest so that only interest under § 408.040 on judgments is allowable.

Since the legal file shows the issue of prejudgment interest was in issue, this issue should have been addressed and resolved.

In the instant case, even though there may have been a dispute as to which of the payments retained by defendant were usurious, the total amount of usury was and is readily ascertainable. The same is true for the service and premium charges of $3,750, covered in Point II of the opinion. Plaintiffs are entitled to prejudgment interest at the rate of 6% on the total usurious amount of $13,282.07 ($9,532.07 interest and $3,750 held as interest) from and after the date of demand through September 28, 1979, § 408.020, RSMo 1969, and at the rate of 9% from and after September 28, 1979, until judgment of September 15, 1980, § 408.020, RSMo Supp.1979, for total prejudgment interest of $3,460.13. *Cotton v. 71 Highway Mini-Warehouse,* 614 S.W.2d 304, 308 (Mo. App.1981).

## V.

■ Plaintiffs' last point is that the trial court erred in awarding attorney's fees of only $500.00 when the uncontroverted evidence showed their attorney spent in excess of 175 hours in trial preparation. "Ordinarily, attorneys' fees are recoverable only when called for by contract or provided by statute, or as an item of collateral damage, or where equity requires." *Julian v. Burrus, supra,* at 141. In this case, §§ 408.030 and 408.050 specifically authorize the recovery of reasonable attorney's fees. Defendant argues that the $500.00 award was sufficient as it was "equal to 53% of judgment awarded." Defendant's logic is no longer applicable in light of the erroneous award of the trial court. This court determines reasonable attorney's fees here, based upon the enumerated factors in Rule 4, DR 2–106(B), to be $4,500.00. *See Craig v. Jo B. Gardner,* 586 S.W.2d 316, 326 (Mo. banc 1979).

Postjudgment interest should be allowed plaintiffs at the rate of 9% after September

15, 1981, until satisfaction. Section 408.040, RSMo Supp. 1979. *Senn v. Commerce Manchester Bank,* 603 S.W.2d 551, 553–554 (Mo. banc 1980); *Cotton, supra.*

The judgment of the trial court is affirmed as to its denial of a double recovery of the usury pursuant to § 408.030, RSMo 1978. The judgment of the trial court is reversed with respect to all other points on this appeal, with directions to: (1) increase the judgment for usury on Count I of plaintiffs' petition from $953.21 to $9,532.07 ($9,532.07 + $3,750.00); (2) allow plaintiffs prejudgment interest of $3,460.13; (3) allow postjudgment interest at 9% on $13,282.07 until satisfaction be made, and (4) increase plaintiffs' attorney fees from $500.00 to $4,500.00 with costs taxed against the defendant. Costs of this appeal are assessed against defendant.